**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| NAACP South Carolina State Conference; Robert Caldwell; Jonathan Bell; Sherry Jenkins, <br><br>         Plaintiffs, <br><br>    v. <br><br> Alan Wilson, in his official capacity as the South Carolina Attorney General; Jenny Wooten, in her official capacity as Interim Executive Director of the State Election Commission; Dennis W. Shedd, in his official capacity as Chairman of the State Election Commission; JoAnne Day, Clifford J. Elder, Linda McCall, and Scott Moseley in their official capacities as members of the State Election Commission, <br><br>         Defendants. | Case No.: 3:25-cv-13754-MGL <br><br><br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

**PRELIMINARY STATEMENT**

1.      South Carolina law restricts who is allowed to give and receive assistance to vote. For Plaintiffs and other South Carolina voters with disabilities or low literacy, those limits infringe on the federal right to receive voting assistance from a person of their choice. Because the provisions described below are preempted by the plain text of Section 208 of the Voting Rights Act, which protects the rights of voters with disabilities and low literacy to vote with autonomy and dignity, those provisions are void and unenforceable under the Supremacy Clause.

2.      Voting is a fundamental right and a first-order priority in a free and democratic society. To preserve access to that fundamental constitutional right for all eligible voters, Congress passed (and has subsequently reauthorized) the Voting Rights Act ("VRA") of 1965.

Congress added Section 208 of the VRA in 1982 to address pervasive barriers to political participation faced by voters with disabilities and low literacy.

3. Section 208 of the VRA states that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

4. Under the VRA, the "terms 'vote' or 'voting,'" 52 U.S.C. § 10310(c)(1), "contemplate[ ] more than the mechanical act of filling out the ballot sheet." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614–15 (5th Cir. 2017) (citing 52 U.S.C. § 10310(c)(1)). Beyond casting a ballot at a polling place or by mail, "voting" also includes voter registration and even steps in the voting process after leaving the ballot box, such as "having such ballot counted properly." *Id.*

5. South Carolina law contravenes the text and purpose of Section 208 by imposing limitations on who may receive assistance with voting and, when such assistance is permitted, limiting who may provide that assistance.

6. To start, South Carolina's restrictions on who may *receive* voting assistance conflict with federal law. Section 208 of the VRA guarantees voting assistance to "[a]ny voter" with a "disability" or "inability to read or write." 52 U.S.C. § 10508. But South Carolina law prohibits voting assistance "of any kind" except to "those persons who are unable to read or write or who are *physically unable or incapacitated* from preparing a ballot or voting." S.C. Code § 7-13-780 (emphasis added). Thus, voters with non-physical disabilities and voters with physical disabilities that do not render them incapacitated are denied their federal right to assistance when voting.

7. South Carolina law also violates the rights of voters with disabilities by restricting who can *provide* voting assistance. Congress, through Section 208, chose to exclude only two groups of people from providing voting assistance: the voter's employer or agent of that employer or officer or agent of the voter's union. 52 U.S.C. § 10508. South Carolina law

excludes many more potential assistors, thereby infringing on voters' right to rely on the assistor of their choice.

8.     First, South Carolina requires that anyone assisting a voter with requesting or returning an absentee ballot who is not the voter's immediate family member meet the statutory definition of an "authorized representative." S.C. Code § 7-15-330(A)(2). An "authorized representative" (1) must be registered to vote in South Carolina and (2) cannot be "a candidate, a member of a candidate's paid campaign staff, or a campaign volunteer." S.C. Code § 7-15-310(7).

9.     Second, South Carolina law limits the number of voters that any individual person may assist. Specifically, S.C. Code Sections 7-15-330 and -385 impose felony penalties for anyone who assists more than five voters by requesting or returning an absentee ballot for them. S.C. Code §§ 7-15-330(B)(4), 7-15-385(G); *see id.* §§ 7-25-170, 7-25-190 ("Five-Voter Limits"). These arbitrary Five-Voter Limits further erode the right conferred by Section 208 and—as detailed below—prevent Plaintiffs and other voters from relying on voting assistance from the person of their choice, such as staff at nursing homes and other congregate care facilities.

10.     Both individually and collectively, these provisions of South Carolina law impose concrete and irreparable harms on Plaintiffs and those similarly situated by forcing them to either forgo completely their right to vote or choose an assistor other than a trusted person of their choice.

11.     These state-law exclusions conflict with Section 208 and impede its purpose and thus are preempted. *See* U.S. Const. art. VI, cl. 2 (Supremacy Clause).

12.     Put simply: Defendants have no power to enforce laws that conflict with federal law, including Section 208 of the VRA. Plaintiffs therefore ask the Court to declare that the challenged provisions are illegal and void and to permanently enjoin their enforcement.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1357. This is a civil rights action arising under 42 U.S.C. § 1983; Section 208 of the Voting Rights Act, 52 U.S.C. § 10508; and the Supremacy Clause, U.S. Const. art. VI, cl. 2.

14.     This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and Rules 57 and 65 of the Federal Rules of Civil Procedure to grant the declaratory and injunctive relief requested.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, at least one Defendant maintains their principal place of business and resides in the District, and all other Defendants are residents of South Carolina. Venue is proper in the Columbia Division because all Defendants, sued in their official capacities, are based in Columbia, South Carolina and each entity that Defendants represent does business related to the alleged events in the Columbia Division. *See* Local Civ. Rule 3.01(A)(1).

16.     This Court has personal jurisdiction over Defendants, who are sued in their official capacities as state officials.

## PARTIES

17.     Plaintiff NAACP SOUTH CAROLINA STATE CONFERENCE (the "South Carolina NAACP") is a nonprofit, nonpartisan membership organization in South Carolina. The South Carolina NAACP is a state subsidiary of the National Association for the Advancement of Colored People ("NAACP"), a national civil rights organization. The South Carolina NAACP was chartered in 1939 and is the oldest civil rights group in South Carolina.

18.     The South Carolina NAACP has 77 branches comprised of members from across the State, including at least one branch in each of South Carolina's 46 counties. The South Carolina NAACP is comprised of more than 13,000 members. Most of its members are Black.

19.     Among the goals of the South Carolina NAACP are the elimination of barriers to Black Americans' and all voters' participation in the democratic process.

20.     The South Carolina NAACP's members include individuals with disabilities who plan to rely on assistance to vote absentee, and who are therefore afforded an assistor of their choice by Section 208 of the VRA but are denied that assistance by South Carolina law.

21.     Plaintiff ROBERT CALDWELL is a 74-year-old man who currently resides at the MUSC Health Chester Nursing Center ("MUSC Chester") in Chester, South Carolina. Mr. Caldwell has resided there for approximately eight years. Mr. Caldwell is the President of the MUSC Chester Resident's Council and in that role helps advocate for residents. Mr. Caldwell is also a member of the South Carolina NAACP.

22.     Mr. Caldwell had a stroke in 2015, largely lost use of his legs, and now relies on a wheelchair to get around. Because of his disability, Mr. Caldwell is afforded an assistor of his choice throughout the voting process under Section 208 of the VRA.

23.     In the past, Mr. Caldwell has relied on MUSC Chester staff to assist him with requesting and returning his absentee ballot.

24.     Mr. Caldwell intends to vote by mail in the 2026 primary and general elections and wants assistance with requesting and returning his absentee ballot. He would choose to receive that assistance from Barvette Gaither, a social worker at MUSC Chester. Because many residents at MUSC Chester seek to rely on Ms. Gaither for voting assistance, the Five-Voter Limits impede Mr. Caldwell's ability to rely on the assistor of his choice to vote in the 2026 elections. *See* S.C. Code §§ 7-15-330(B)(4), 7-15-385(G).

25.     Plaintiff JONATHAN BELL is a 60-year-old man who currently resides at Union Post Acute, a post-acute care facility and nursing home in Union, South Carolina. He has a physical disability caused by complications from back surgery and uses a wheelchair.

26.     Mr. Bell intends to vote by mail in the 2026 primary and general elections. Under Section 208 of the VRA, Mr. Bell is entitled to vote with assistance and wants to rely on assistance from Deborah Allen, the Activities Director at Union Post Acute. Mr. Bell's right to

obtain assistance from the person he trusts is impeded by South Carolina's Five-Voter Limits on providing assistance, as more than five other residents will likely rely on Ms. Allen for help voting in the 2026 elections. *See* S.C. Code §§ 7-15-330(B)(4), 7-15-385(G).

27.     Plaintiff SHERRY JENKINS is a 75-year-old woman who also resides at Union Post Acute in Union, South Carolina. Ms. Jenkins has resided at Union Post Acute since November 2023.

28.     Ms. Jenkins has both physical and nonphysical disabilities. Ms. Jenkins has osteoporosis, scoliosis, an optic nerve impairment, and macular degeneration. She relies on a wheelchair to get around and, because of her vision impairment, requires assistance with reading and filling out paperwork.

29.     Ms. Jenkins requires assistance to vote and is afforded an assistor of her choice throughout the voting process under Section 208 of the VRA.

30.     Ms. Jenkins intends to vote by mail in the 2026 primary and general elections and wants assistance with requesting, filling out, and returning her absentee ballot. She would like to receive that assistance from Ms. Allen. As with Mr. Bell, the Five-Voter Limits impede Ms. Jenkins' ability to rely on Ms. Allen (the assistor of her choice) to vote in the 2026 elections. *See* S.C. Code §§ 7-15-330(B)(4), 7-15-385(G).

31.     Defendant ALAN WILSON is the Attorney General of South Carolina and is sued in his official capacity. As the chief prosecuting officer in the State, he is tasked with supervising the enforcement of the State's criminal laws, S.C. Const. art. V, § 24, including through his constitutional authority to supervise and direct the activities of the solicitors or prosecuting attorneys located in each judicial circuit of the State. This authority includes supervising the enforcement of criminal penalties for violating the State's restrictions on voting assistance, S.C. Code §§ 7-15-330(F), 7-15-385(G), 7-25-170, 7-25-190.

32.     Defendant JENNY WOOTEN is the Interim Executive Director of the State Election Commission and is sued in her official capacity. As Interim Executive Director, she is the chief administrative officer of the Commission and responsible for supervising the

promulgation of election regulations and ensuring that the Commission and county boards of voter registration and elections comply with federal and state law. S.C. Code §§ 7-3-10, 7-3-20.

33.     Defendant DENNIS W. SHEDD is Chairman of the State Election Commission and is sued in his official capacity. As Chairman of the Commission, he is tasked with carrying out South Carolina's voting laws and promulgating regulations for county boards of voter registration and elections pursuant to them. S.C. Code § 7-15-10.

34.     Defendants JOANNE DAY, CLIFFORD J. ELDER, LINDA MCCALL, and SCOTT MOSELEY are Members of the State Election Commission and are sued in their official capacities. As Members of the Commission, they are tasked with carrying out South Carolina's voting laws and promulgating regulations for county boards of voter registration and elections pursuant to them. S.C. Code § 7-15-10.

## FACTUAL ALLEGATIONS

### I.     Many voters with disabilities require assistance to vote.

35.     Research from the United States Election Assistance Commission (EAC)[1] confirms that voters with disabilities are far more likely than other voters to need assistance with voting.

36.     Voters with disabilities are both more likely to rely on absentee voting and more likely to need assistance with doing so. Some of those voters rely on family members to help them vote absentee, but a majority rely on other assistors, such as a non-family member that lives with them, a friend or neighbor, or a congregate care facility aide.

---

[1] The EAC is an independent, bipartisan commission created by the Help America Vote Act of 2002 whose mission is to help election officials improve the administration of elections and help Americans participate in the voting process. *See* U.S. Election Assistance Comm'n, *About the EAC*, https://www.eac.gov/about [https://perma.cc/9YHY-ZNZY] (last accessed Dec. 1, 2025); *see also* 52 U.S.C. §§ 20921 *et seq*.

37.     According to the South Carolina Department on Aging, there are 2,039 long-term care facilities with over 40,000 beds in the State.[2] Many residents of those facilities, including Plaintiffs Mr. Caldwell, Ms. Jenkins, and Mr. Bell, rely on assistance to vote absentee.

38.     South Carolinians who need voting assistance because of a disability include but are not limited to blind voters, deaf voters, and other voters with vision or hearing impairments; voters with mobility impairments; and voters with cognitive impairments.

**II.     Section 208 of the Voting Rights Act guarantees that voters with disabilities and low-literacy voters can vote with assistance from a person of their choice.**

39.     As part of its amendments to the Voting Rights Act in 1982, Congress added Section 208, which provides: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

40.     Congress added this section to the VRA to address pervasive barriers to the franchise that blind, deaf, and other voters with disabilities identified and to support their participation in the democratic process while maintaining their autonomy. As the Senate recognized, "[c]ertain discrete groups of citizens" including "blind [voters], . . . disabled [voters], and those who either do not have a written language or who are unable to read or write sufficiently well to understand the election material and the ballot," are "unable to exercise their rights to vote without obtaining assistance in voting." S. Rep. 97-417, at 62 (1982).

41.     Congress found that allowing voters with disabilities to choose their preferred assistor was "the only way to assure meaningful voting assistance and to avoid possible

---

[2] *See* S.C. Dep't on Aging, *Long Term Care Ombudsman Program*, https://aging.sc.gov/programs-initiatives/long-term-care-ombudsman-program#:~:text=South%20Carolina%20has%202%2C039%20long%20term%20care%20faciliti es,facilities%2C%20DDSN%20and%20DMH%20facilities%29%20with%2043%2C678%20bed s. [https://perma.cc/L9XW-EQH7] (last accessed Dec. 1, 2025).

intimidation or manipulation of the voter. To do otherwise would deny these voters the same opportunity to vote enjoyed by all citizens." *Id*.

42. Congress's guarantee of assistance also extends to low-literacy voters. Because Congress banned literacy tests as "a discriminatory device to prevent [Black Americans] from registering to vote," the "denial of assistance to illiterate voters," Congress found, would "conflict with the Voting Rights Act." *Id.* at 63. Section 208 is properly understood, then, as an extension of the VRA's prohibition of literacy tests that were "used to disqualify [B]lacks from registering and voting in Federal and state elections." *Id.* at 118.

43. Thus, Section 208 guarantees that voters with disabilities and low literacy (together "covered voters") choose any person to assist them in the voting process "other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

44. The right to assistance extends to "all action necessary to make a vote effective in any . . . election, including, but not limited to, registration." 52 U.S.C. § 10310. Any covered voter is therefore guaranteed an assistor of their choice when they request an absentee ballot application, complete and return the absentee ballot application, and when they fill out and return their absentee ballot.

45. The plain language of Section 208 preempts any state law that limits who a covered voter can choose to assist them beyond the two narrow exceptions Congress articulated. Congress clearly meant "[t]o limit the risks of discrimination against voters in these specified groups and avoid denial or infringement of their right to vote" by guaranteeing "assistance of a person of their own choice." S. Rep. 97-417, at 62.

46. Section 208 provides the universe of exceptions to who may serve as an assistor. Any law that requires voters to choose an assistor from categories of individuals, such as family members or registered voters, "impermissibly narrows the right guaranteed by Section 208." *OCA-Greater Houston*, 867 F.3d at 615.

47.     So too, Section 208 protects against state laws that limit how many voters an individual may assist. This is so because those limits prevent a covered voter from choosing the assistor of their choice if that person has already reached the limit of the number of voters they may assist in an election.

48.     Often, voters in congregate care facilities—who rely on absentee voting because of mobility-related disabilities and other practical barriers to voting at the polls—depend on one staff member who they trust. It is common for many residents at one facility to rely on the same staff member to assist them in voting. This includes Plaintiffs Mr. Bell, Ms. Jenkins, and Mr. Caldwell. Numerical limits on how many voters an individual can assist violate voters' right to use the assistor of their choice—often the only assistor available or the one person a voter trusts to assist them.

49.     In enacting Section 208, Congress understood that even laws that "deny the assistance at *some* stages of the voting process during which assistance was needed" are preempted. S. Rep. 97-417, at 63 (emphasis added).

**III.     South Carolina's limitations on voting assistance conflict with and are preempted by Section 208.**

50.     South Carolina law conflicts with federal law both with regard to who is eligible to receive assistance with voting and who is allowed to provide that assistance.

        A.     Limits on Voting Assistance Eligibility

51.     South Carolina prohibits voting assistance "of any kind" except for "those persons who are unable to read or write or who are *physically unable or incapacitated from preparing a ballot or voting*," S.C. Code § 7-13-780 (emphasis added) ("Limits on Voting Assistance Eligibility").

52.     By contrast, Section 208 of the VRA guarantees voting assistance to "[a]ny voter" with a "disability." 52 U.S.C. § 10508. Although the term "disability" is not defined in the VRA, other provisions of federal law and contemporaneous definitions confirm that the ordinary

meaning of "disability" includes both physical and mental impairments. *See, e.g.*, *Williams v. Kincaid*, 45 F.4th 759, 766 (4th Cir. 2022) ("The ADA defines the term 'disability' broadly to include 'a physical or mental impairment that substantially limits one or more major life activities of such individual.'" (citing 42 U.S.C. § 12102(1)(A) (Americans with Disabilities Act of 1990)); 42 U.S.C. § 416(i)(1) (Social Security Act) (defining "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment"); *Disability*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/disability [https://perma.cc/K88D-BVL7] (last accessed Dec. 1, 2025) ("a physical, mental, cognitive, or developmental condition that impairs, interferes with, or limits a person's ability to engage in certain tasks or actions or participate in typical daily activities and interactions").

53.     As a result, South Carolina prohibits voters with non-physical impairments from receiving the voting assistance guaranteed to them by federal law.

54.     Voters who do not have physical disabilities but have other forms of disabilities who rely on assistance to vote—including some members of the South Carolina NAACP—are barred by South Carolina law from relying on assistance "of any kind" in voting. S.C. Code § 7-13-780.

55.     Even voters who have physical disabilities but who are not "physically unable or incapacitated from preparing a ballot or voting" are barred from receiving *any* assistance under South Carolina law. *Id*. This includes Plaintiffs Mr. Caldwell and Mr. Bell, who have physical disabilities that they do not believe render them completely physically incapacitated from voting.

56.     South Carolina law permits a narrower class of voters to receive voting assistance than does Section 208. In so doing, the Limits on Voting Assistance Eligibility, S.C. Code § 7-13-780, are preempted by federal law.

### B. Limits on Possible Assistors

57. Congress excluded covered voters from receiving assistance from two groups—and *only* two groups—of individuals: (1) a voter's employer or agent of that employer; and (2) an officer or agent of the voter's union. 52 U.S.C. § 10508. South Carolina's laws that limit the universe of eligible assistors beyond those two groups are preempted by federal law. *See* S.C. Code §§ 7-15-310(7), 7-15-330(A), (C), (F), 7-15-385(A)(3), (G) (collectively, "Limits on Possible Assistors").

58. The limited class of people with acute physical disabilities legally permitted to request an absentee application face a gauntlet of legal restrictions on who they may choose as an assistor to request, S.C. Code § 7-15-330(A)(2), (C), and return, *id.* § 7-15-385(A)(3), their absentee ballot.

59. Covered voters, including Plaintiffs, face an impossible choice: rely on an assistor other than one of their choice (if one is even available to them), sacrificing their autonomy; refrain from voting at all or doing so without necessary assistance; or expose their assistor—a trusted friend, loved one, or nursing home aide—to steep felony criminal penalties, including imprisonment of up to five years. *Id.* §§ 7-15-330(F) (citing § 7-25-170), 7-15-385(G) (citing § 7-25-190). These restrictions on who may assist in the absentee voting process and the attendant felony penalties are preempted by Section 208.

#### i. *"Immediate Family" Members*

60. Data from the federal EAC show that a majority of voters with disabilities who rely on assistance to vote rely on a *non-family* member to assist them. This includes voters with disabilities who do not have immediate family members nearby or would prefer to rely on other individuals for assistance.

61. However, South Carolina makes it a felony for many voters with disabilities to rely on anyone other than a member of their "immediate family" to request or return their absentee ballot. S.C. Code §§ 7-15-330(A), (C), 7-15-385(A)(3). An "immediate family" member is defined as "a person's spouse, parents, children, brothers, sisters, grandparents,

grandchildren, and mothers-in-law, fathers-in-law, brothers-in-law, sisters-in-law, sons-in-law, and daughters-in-law." S.C. Code § 7-15-310(8).

62. Voters with disabilities can rely on an "authorized representative" for assistance requesting or returning their absentee ballot only if they: (a) are confined to a hospital, nursing home, residence, or somewhere similar, (b) have a physical disability which renders transportation to a polling place impossible, or (c) are physically incapable of accessing voting spaces because of architectural barriers. S.C. Code § 7-15-310(7). Voters who do not meet these strictures can rely only on immediate family members for assistance to vote absentee.

63. As a result, Section 7-15-310(7)'s limits on who may rely on an "authorized representative" are preempted by Section 208.

       *ii.*    *"Authorized Representatives"*

64. More still, an authorized representative must be registered to vote in South Carolina and may not be a candidate or a paid or volunteer member of a candidate's campaign staff. S.C. Code § 7-15-310(7); *see id.* § 7-1-20(14) (defining "registered elector" as "a person whose name is contained on the active roster of voters maintained by the State Election Commission . . . and who possesses a valid registration certificate").

65. Some individuals who covered voters would prefer to rely on are not registered to vote in South Carolina because they are ineligible—if they reside out of state or are a lawful permanent resident, for instance—or merely chose not to register to vote. Consider, for example, the residential care facilities along South Carolina's border. Facilities in places like North Augusta, Fort Mill, Rock Hill, and Bluffton are regularly staffed by individuals who live and vote across the neighboring border in North Carolina and Georgia. Yet they (like Ms. Gaither at MUSC Chester and Ms. Allen at Union Post Acute) are the very individuals that facility residents most trust to assist them with the voting process. Section 208 does not permit the State to prohibit voters from receiving assistance from individuals who are not registered to vote in South Carolina.

66.     South Carolina law thus requires covered voters to rely only on assistance to vote absentee from registered voters (who are not a candidate or a member of their campaign) or immediate family members. *Id.* §§ 7-15-310(7), 7-15-330(A), (C), 7-15-385(A)(3). These provisions represent yet another limit on the universe of assistors voters with disabilities have the right to choose and are therefore preempted by Section 208.

C.     Five-Voter Limits

67.     South Carolina law also prohibits anyone from requesting more than five absentee ballot applications or returning more than five absentee ballots for others, meaning a covered voter cannot receive assistance in requesting a ballot application or returning an absentee ballot from the person of their choice if that person has reached the five-voter limit. S.C. Code §§ 7-15-330(B)(4), 7-15-385(G).

68.     The Five-Voter Limits are preempted by Section 208 because they prohibit covered voters from relying on any individual who has already assisted five other voters by requesting an absentee ballot application or returning their absentee ballot.

69.     The Five-Voter Limits are especially harmful at nursing homes and other congregate care facilities.

70.     At MUSC Chester, for example, all voting assistance used to be arranged and provided by a facility social worker—Barvette Gaither. Both when new residents arrive at the facility and prior to upcoming elections, Ms. Gaither confirms with residents whether they are registered to vote and asks them if they need assistance with the voting process. If residents need assistance, Ms. Gaither asks from whom they would like to receive assistance.

71.     Because of Ms. Gaither's rapport with facility residents, her proximity to them, and her familiarity with the voting process, many residents ask that she assist them with voting. Prior to the effective date of S.C. Code Sections 7-15-330(B)(4) and -385(G), Ms. Gaither assisted approximately 10 to 25 voters per election.

72.     Now that Ms. Gaither is prohibited by South Carolina law from helping more than five residents per election, she does her best to make arrangements for the other residents to receive assistance from family, friends, or other staff members. This burdens Ms. Gaither, other staff, and the residents, who aren't sure who will be available to help them. Except for the five voters she assists, every resident who would choose to rely on Ms. Gaither is denied the assistance of the person of their choice.

73.     Mr. Caldwell is a MUSC Chester resident and wants Ms. Gaither to assist him with voting in the 2026 primary and general elections. Because of South Carolina's Five-Voter Limits, he will likely instead receive assistance from another person (or from no one at all).

74.     The harms faced by Union Post Acute residents are similar. There, Activities Director Deborah Allen is the person who coordinates voting assistance for the facility's approximately 25 residents who vote. Ms. Allen has been helping Union Post Acute residents vote for more than two decades. Because of the Five-Voter Limits, Ms. Allen is now severely constrained in her ability to assist voters who rely on her help.

75.     Ms. Jenkins wants help from Ms. Allen to vote. Ms. Jenkins has not voted in a while and is new to voting absentee. She wants Ms. Allen to help her vote because she deeply trusts Ms. Allen and because Ms. Allen is familiar with and can help Ms. Jenkins understand the multi-step absentee registration and voting process.

76.     Mr. Bell also wants help from Ms. Allen to vote. Although Mr. Bell has family members who have helped him vote in the past, he doesn't want to burden them when it is more convenient for Ms. Allen to help him. He also knows that Ms. Allen is reliable and will make sure his ballot gets counted. Because Mr. Bell has available family members, he will not be prioritized as one of the five voters for Ms. Allen to help in the 2026 elections. But he cannot be sure that his family members will help him fill out his forms and ballot properly and return his ballot on time.

77.     Like Mr. Caldwell at MUSC Chester, Ms. Jenkins and Mr. Bell will be denied

voting assistance from the person of their choice unless South Carolina's Five-Voter Limits are

preempted by Section 208 and declared void.

## CLAIMS FOR RELIEF

### Count One

**Limits on Voting Assistance Eligibility**

**U.S. Const. art. VI, cl. 2; 52 U.S.C. § 10508; 42 U.S.C. § 1983**

78.     Plaintiffs repeat and reallege the allegations contained in the preceding

paragraphs as if fully set forth herein.

79.     Section 208 of the VRA provides:

> Any voter who requires assistance to vote by reason of blindness,
> disability, or inability to read or write may be given assistance by a person
> of the voter's choice, other than the voter's employer or agent of that
> employer or officer or agent of the voter's union.

52 U.S.C. § 10508.

80.     The VRA protects "all action necessary to make a vote effective in any primary,

special, or general election, including, but not limited to, registration . . . or other action required

by law prerequisite to voting, casting a ballot, and having such ballot counted properly." 52

U.S.C. § 10310(c)(1). Section 208 thus protects the right to assistance in all parts of the voting

process, including registering to vote and requesting and returning an absentee ballot.

81.     South Carolina law prohibits all voters from receiving voting assistance "of any

kind" except "those persons who are unable to read or write or who are physically unable or

incapacitated from preparing a ballot or voting." S.C. Code § 7-13-780.

82.     By contrast, Section 208 of the VRA guarantees voting assistance to "[a]ny

voter" with a "disability." 52 U.S.C. § 10508. The ordinary meaning of "disability"—as

confirmed by other provisions of federal law and dictionary definitions—includes both physical

and mental impairments. *See, e.g.*, *Williams*, 45 F.4th at 766 (citing 42 U.S.C. § 12102(1)(A)); 42 U.S.C. § 416(i)(1); *Disability*, Merriam-Webster's Dictionary .

83. Under S.C. Code Section 7-13-780, voters including Mr. Bell and Mr. Caldwell who have physical disabilities but who do not believe they are "incapacitated" from voting are prohibited from receiving assistance of any kind. So too, voters with non-physical disabilities , including members of the South Carolina NAACP, are prohibited from receiving assistance in the voting process under this provision. But under Section 208, they are entitled to rely on an assistor of their choice.

84. S.C. Code Section 7-13-780 is, therefore, null and void under the Supremacy Clause because it obstructs the accomplishment and execution of the full purposes and objectives of Section 208 of the VRA.

85. Denial of Plaintiffs' and the South Carolina NAACP's members' right to vote with assistance will subject them to irreparable harm.

<u>**Count Two**</u>

**Limits on Possible Assistors**

**U.S. Const. art. VI, cl. 2; 52 U.S.C. § 10508; 42 U.S.C. § 1983**

86. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

87. If a voter is authorized to vote absentee under S.C. Code Section 7-15-320 and is eligible to receive voting assistance under Section 208 of the VRA, then federal law guarantees their right to "assistance by a person of the voter's choice," so long as the assistor is not "the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. Put another way, Congress—through the text of Section 208—gave voters "unfettered choice over who may assist them with the voting process," "[o]ther than these two excluded groups." *Disability Rts. N.C. v. N.C. State Bd. of Elections*, 602 F. Supp. 3d 872, 877–78 (E.D.N.C. 2022).

88.     Many South Carolinians with disabilities or low literacy are eligible to vote absentee and would choose to rely on assistance to vote absentee from someone other than an "immediate family" member, but are precluded from doing so under South Carolina law. And some voters would choose to rely on someone who does not meet the statutory definition of "authorized representative." By limiting voters to receiving absentee voting assistance only from "immediate family" members and cabining who can serve as an "authorized representative," South Carolina law impermissibly narrows the universe of available assistors.

89.     Under South Carolina law, voters may only receive assistance to request or return their absentee ballot from a non-immediate family member if the voter is "confine[d] in a hospital, sanatorium, nursing home, or place of residence, or . . . [is] unable because of a physical handicap to go to his polling place or because of a handicap is unable to vote at his polling place due to existing architectural barriers." S.C. Code § 7-15-310(7); *see id.* §§ 7-15-330(A)(2), (C), 7-15-385(A)(3).

90.     Even if a South Carolina voter is permitted to seek assistance from someone other than an "immediate family" member, they still may only obtain assistance from someone meeting the statutory conditions for an "authorized representative" under S.C. Code Section 7-15-310(7).

91.     Because the Limits on Possible Assistors, S.C. Code §§ 7-15-310(7), 7-15-330(A), (C), 7-15-385(A)(3), require some voters to rely only on family members and exclude additional categories of potential assistors from serving as "authorized representatives," these laws obstruct the accomplishment and execution of the full purposes and objectives of Section 208 of the VRA and are thus null and void.

92.     Denial of covered voters' right to vote with the assistors of their choosing will subject them to irreparable harm.

**Count Three**

**Five-Voter Limits**

**U.S. Const. art. VI, cl. 2; 52 U.S.C. § 10508; 42 U.S.C. § 1983**

93.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

94.     South Carolina law prohibits any person from "request[ing] absentee applications for more than five qualified electors per election, in addition to himself," S.C. Code § 7-15-330(B)(4), and from "return[ing] more than five return-addressed envelopes in an election, in addition to his own," *id.* § 7-15-385(G). Violators are subject to felony criminal penalties, including imprisonment of up to five years. *Id.* §§ 7-15-330(F), 7-15-385(G).

95.     The Five-Voter Limits preclude covered voters from selecting an assistor of their choice if that person has already helped five voters.

96.     The Five-Voter Limits cause particularly acute harm in congregate care facilities, where residents rely on staff to facilitate the absentee voting process.

97.     For example, staff at Union Post Acute have long provided trusted assistance to voters with disabilities to ensure that they are able to request and return absentee ballots.

98.     But because there are many more Union Post Acute residents seeking voting assistance than staff who are knowledgeable about providing assistance, residents like Mr. Bell and Ms. Jenkins are denied "assistance by a person of the voter's choice." 52 U.S.C. § 10508.

99.     The same harm is incurred by Mr. Caldwell, who would choose assistance from Ms. Gaither but likely will not receive it because many other residents at MUSC Chester rely on Ms. Gaither for assistance with requesting and submitting their absentee ballots.

100.    Without question, the Five-Voter Limits, S.C. Code §§ 7-15-330(B)(4), 7-15-385(G), obstruct the accomplishment and execution of the full purposes and objectives of Section 208 of the VRA and are thus null and void.

101.    Denial of Plaintiffs' and the South Carolina NAACP's members' right to vote with the assistors of their choice will subject them to irreparable harm.

19

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment providing the following relief:

(a)     Declare that the Limits on Voting Assistance Eligibility, S.C. Code § 7-13-780, and Five-Voter Limits, *id.* §§ 7-15-330(B)(4), 7-15-385(G), violate Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, and are null and void under the Supremacy Clause, U.S. Const. art. VI, cl. 2;

(b)     Permanently enjoin Defendants from implementing and enforcing South Carolina Code Sections 7-13-780, -330(B)(4), and -385(G) to the extent they conflict with federal law;

(c)     Declare that the Limits on Possible Assistors, S.C. Code §§ 7-15-310(7), 7-15-330(A), (C), 7-15-385(A)(3), violate Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, and the Supremacy Clause, U.S. Const. art. VI, cl. 2, and are null and void under the Supremacy Clause, to the extent that they apply to covered voters and thus violate their right to voting assistance;

(d)     Permanently enjoin Defendants from implementing and enforcing the Limits on Possible Assistors, S.C. Code §§ 7-15-310(7), 7-15-330(A), (C), 7-15-385(A)(3), as applied to covered voters in South Carolina, to the extent they conflict with federal law;

(e)     Permanently enjoin Defendant Attorney General Wilson from authorizing or initiating any criminal enforcement of South Carolina Code Section 7-15-330(F) to enforce Sections 7-15-330(A)(2), (B)(4), and (C), Section 7-15-385(G), or any other alleged violations of preempted provisions;

(f)     Order Defendant Interim Executive Director Wooten to supervise the revision of the State Election Commission's Poll Manager's Handbook in accordance with this Court's equitable relief, and order all Defendants to issue corrective instructions and guidance to relevant State, county, and local officials informing them of this Court's equitable relief;

(g)     Order Defendants to issue informational guidance on public websites accessible under the standards of the Americans with Disabilities Act informing all South Carolinians of this Court's equitable relief and explaining the right of all voters with disabilities to assistance from an individual of the voter's choice, under Section 208 of the Voting Rights Act;

(h)     Grant Plaintiffs their fees, costs, and expenses, including reasonable attorneys' fees pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988; and

(i)     Grant Plaintiffs such additional and further relief as this Court deems just and proper.

Dated: December 5, 2025                         Respectfully submitted,

/s/ Allen Chaney

Allen Chaney, Fed. ID 13181                     Clayton Pierce*
AMERICAN CIVIL LIBERTIES UNION OF SOUTH          Davin Rosborough*
CAROLINA FOUNDATION                              Jonathan Topaz*
P.O. Box 1668                                    Sophia Lin Lakin*
Columbia, SC 29202                               AMERICAN CIVIL LIBERTIES UNION
(864) 372-6681                                   FOUNDATION
achaney@aclusc.org                               125 Broad Street, 18th Floor
                                                 New York, NY 10004
Stephen D. Hibbard*                              (212) 549-2500
PROSKAUER ROSE LLP                               cpierce@aclu.org
2029 Century Park East                           drosborough@aclu.org
Suite 2400                                       jtopaz@aclu.org
Los Angeles, CA 90067-3010                       slakin@aclu.org
(310) 284-5622
shibbard@proskauer.com
                                                 Brian Dimmick*
Jordan R. Duval*                                 AMERICAN CIVIL LIBERTIES UNION
Bradley M. Presant*                              FOUNDATION
Michael Beckwith*                                915 15th Street NW, 6th Floor
PROSKAUER ROSE LLP                               Washington, D.C. 20005
Eleven Times Square                              (202) 731-2395
New York, NY 10036-8299                          bdimmick@aclu.org
(212) 969-3284
jduval@proskauer.com
bpresant@proskauer.com
mbeckwith@proskauer.com

Robert W. Pommer III*
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 600 South
Washington, DC 20004-2533
(202) 416-6808
rpommer@proskauer.com

Jake T. Lee*
PROSKAUER ROSE LLP
Poydras Center
650 Poydras Street
Suite 1800
New Orleans, LA 70130-6146
(504) 310-2034
jtlee@proskauer.com

*Counsel for Plaintiffs NAACP South Carolina State Conference, Robert Caldwell, Jonathan Bell, and Sherry Jenkins*

*\* Motion for admission Pro Hac Vice forthcoming*