# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| NAACP SOUTH CAROLINA STATE CONFERENCE; ROBERT CALDWELL; JONATHAN BELL; SHERRY JENKINS, <br><br> Plaintiffs, <br><br> v. <br><br> ALAN WILSON, in his official capacity as the South Carolina Attorney General; JENNY WOOTEN, in her official capacity as Interim Executive Director of the State Election Commission; DENNIS W. SHEDD, in his official capacity as Chairman of the State Election Commission; JOANNE DAY, CLIFFORD J. ELDER, LINDA McCALL, and SCOTT MOSELEY in their official capacities as members of the State Election Commission, <br><br> Defendants. | Case No. 3:25-cv-13754-MGL |

## <u>SEC Defendants' Memorandum in Support of Motion to Dismiss</u>

Defendants Jenny Wooten, in her official capacity as Interim Executive Director of the State Election Commission (SEC), Dennis W. Shedd, in his official capacity as Chairman of the State Election Commission, and Joanne Day, Clifford J. Elder, Linda McCall,[1] and Scott Moseley in their official capacities as members of the State Election Commission (SEC Defendants), hereby submit this Memorandum in Support of their Motion to Dismiss and seek an Order dismissing this matter based on Rule 12(b)(1) of the Federal Rules of Civil Procedure, Article III

---

[1] Linda McCall resigned her position with the Commission on September 22, 2025. The seat she previously occupied is now vacant.

of the United States Constitution, and all applicable statutes, case law, and rules of procedure, and all arguments presented to this Honorable Court.

## Introduction

The NAACP South Carolina State Conference (NAACP), and three individual plaintiffs, Robert Caldwell, Jonathan Bell, and Sherry Jenkins (Individual Plaintiffs) (collectively, Plaintiffs) have sued the SEC Defendants and Alan Wilson, in his official capacity as the South Carolina Attorney General and complain that they are harmed by various state election statutes (Challenged Statutes). Plaintiffs request that this Court provide (1) a declaration that the Challenged Statutes conflict with (and are therefore preempted by) Section 208 of the Voting Rights Act, 52 U.S.C.A. § 10508, and (2) an injunction barring the implementation and enforcement of those statutes.

However, the Court lacks subject matter jurisdiction and should dismiss the case under Rule 12(b)(1), FRCP, because the Plaintiffs do not have Article III standing to bring this action. Specifically, Plaintiffs have not sufficiently alleged that the Challenged Statutes harm or threaten to harm the Individual Plaintiffs in any way. Rather, the purported harms hinge on speculation, conjecture, and strained interpretations of how statutes might be applied to third parties not before the Court. As for the NAACP, it cannot have organizational standing because it alleges no harms to itself as an organization, and it cannot have associational standing because it has not identified an NAACP member with standing in their own right. Finally, no Plaintiff has redressable right to the injunctive relief requested.

## Relevant Background and Allegations

### 1.     Section 208 of the Voting Rights Act

Section 208 of the Voting Rights Act (Section 208) provides that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be

65140268 v1

given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C.A. § 10508. Plaintiffs allege that Section 208 preempts various state election statutes, the Challenged Statutes.

**2.    Factual allegations**

Principally, the allegations in the Complaint are directed at the so-called "Five-Voter Limits" statutes,[2] S.C. Code Ann. § 7-15-330(B)(4) ("A person **must not request** absentee applications for more than five qualified electors per election, in addition to himself.") (emphasis added), and section 7-15-385(G) ("**It is unlawful for a person to return** more than five return-addressed envelopes in an election, in addition to his own.") (emphasis added).[3]

The principal pertinent factual allegations are as follows:

(1)    The NAACP is an organization which has members. Compl. ¶ 17.

(2)    Each of the Individual Plaintiffs resides in a long-term care facility. Mr. Caldwell currently resides at MUSC Health Chester Nursing Center (MUSC Chester), Compl. ¶ 21, while Mr. Bell and Ms. Jenkins reside at Union Post Acute. Compl. ¶¶ 25, 27.

(3)    Mr. Caldwell is a member of the NAACP. Compl. ¶ 21. It is not alleged that Mr. Bell or Ms. Jenkins are members of the NAACP.

(4)    Each of the Individual Plaintiffs is physically disabled. Compl. ¶¶ 22, 25, 28. Ms. Jenkins has a nonphysical disability in addition to her physical disability. Compl. ¶ 28. "Mr.

---

[2] For the purposes of this Motion only, the SEC Defendants are accepting Plaintiffs' characterization of these statutes. This should in no way be construed as admitting these characterizations are accurate.

[3] As discussed in detail *infra*, and reflected in the emphasized language above, sections 7-15-330(B)(4) and 7-15-385(G) only cover situations where a voter is **requesting** or **returning** absentee ballots. They do not place a numerical limit on other acts of assisting disabled people in the voting process.

Caldwell and Mr. Bell … have physical disabilities that they do not believe render them completely physically incapacitated from voting." Compl. ¶ 55.

(5)      Each of the Individual Plaintiffs is legally entitled to assistance in the voting process because of his or her disability. Compl. ¶ 22 ("Because of his disability, Mr. Caldwell is afforded an assistor of choice throughout the voting process under Section 208 of the VRA."); Compl. ¶ 26 ("Under Section 208 of the VRA, Mr. Bell is entitled to vote with assistance . . . ."); Compl. ¶ 29 (Ms. Jenkins "is afforded an assistor of choice throughout the voting process under Section 208 of the VRA.").

(6)      Each of the Individual Plaintiffs intends to vote by mail in the 2026 primary and general elections. Compl. ¶¶ 24, 26, 30.

(7)      Each of the Individual Plaintiffs has identified a specific person to assist them in the voting process. Compl. ¶¶ 24, 26, 30.

(8)      Mr. Caldwell's assistor of choice is Barvette Gaither, a Social Worker at MUSC Chester. Compl. ¶ 24. He specifically "wants assistance [from Ms. Gaither] with requesting and returning his absentee ballot." Compl. ¶ 24.

(9)      At MUSC Chester,

> all voting assistance used to be arranged and provided by … [Ms.] Gaither. Both when new residents arrive at the facility and prior to upcoming elections, Ms. Gaither confirms with residents whether they are registered to vote and asks them if they need assistance with the voting process. If residents need assistance, Ms. Gaither asks from whom they would like to receive assistance.

Compl. ¶ 70.

(10)     "[M]any [MUSC Chester] residents ask that [Ms. Gaither] assist them with voting. Prior to the effective date of S.C. Code Sections 7-15-330(B)(4) and -385(G), Ms. Gaither assisted approximately 10 to 25 voters per election." Compl. ¶ 71.

65140268 v1

(11)    Because of the "Five-Voter Limits" statutes, Ms. Gaither

does her best to make arrangements for the other residents to receive assistance from family, friends, or other staff members. This burdens Ms. Gaither, other staff, and the residents, who aren't sure who will be available to help them. Except for the five voters she assists, every resident who would choose to rely on Ms. Gaither is denied the assistance of the person of their choice.

Compl. ¶ 72.

(12)    Mr. Bell's and Ms. Jenkins' assistor of choice is Deborah Allen, the Activities Director at Union Post Acute. Compl. ¶ 26, 30.

(13)    At Union Post Acute, "[Ms.] Allen is the person who coordinates voting assistance for the facility's approximately 25 residents who vote. Ms. Allen has been helping Union Post Acute residents vote for more than two decades. Because of the Five-Voter Limits, Ms. Allen is now severely constrained in her ability to assist voters who rely on her help." Compl. ¶ 74.

(14)    Ms. Jenkins "wants assistance [from Ms. Allen] with requesting, filling out, and returning her absentee ballot." Compl. ¶ 30. Additionally, "Ms. Jenkins has not voted in a while and is new to voting absentee. She wants Ms. Allen to help her vote because she deeply trusts Ms. Allen and because Ms. Allen is familiar with and can help Ms. Jenkins understand the multi-step absentee registration and voting process." Compl. ¶ 75.

(15)    Mr. Bell generally desires assistance from Ms. Allen with absentee voting and indicates he "wants help from Ms. Allen to vote." Compl. ¶¶ 26, 76. Additionally, "[a]lthough Mr. Bell has family members who have helped him vote in the past, he doesn't want to burden them when it is more convenient for Ms. Allen to help him. He also knows that Ms. Allen is reliable and will make sure his ballot gets counted." Compl. ¶ 76.

(16)    Mr. Bell also claims that "[b]ecause [he] has available family members, he will not be prioritized as one of the five voters for Ms. Allen to help in the 2026 elections. But he

cannot be sure that his family members will help him fill out his forms and ballot properly and return his ballot on time." Compl., ¶ 76.

### 3. Statutory allegations.

### A. "Five-Voter Limits"

The Complaint alleges that the "Five-Voter Limits" impede or deny altogether the Individual Plaintiffs' right to rely on the assistor of their choice, which conflicts with Section 208 of the Voting Rights Act. *See*, *e.g.*, Compl. ¶ 24 ("Because many residents at MUSC Chester seek to rely on Ms. Gaither for voting assistance, the Five-Voter Limits impede Mr. Caldwell's ability to rely on the assistor of his choice to vote in the 2026 elections."); Compl. ¶ 73 ("Because of South Carolina's Five-Voter Limits, he will likely instead receive assistance from another person (or from no one at all)."); Compl. ¶ 77 (alleging that the Individual Plaintiffs "will be denied voting assistance from the person of their choice unless South Carolina's Five-Voter Limits are preempted by Section 208 and declared void."); Compl. ¶ 98 ("[B]ecause there are many more Union Post Acute residents seeking voting assistance than staff who are knowledgeable about providing assistance, residents like Mr. Bell and Ms. Jenkins are denied assistance by a person of the voter's choice ….") (internal citations and quotation marks omitted).

### B. "Limits on Voting Assistance Eligibility"

The Complaint also makes claims about the "Limits on Voting Assistance Eligibility," found in section 7-13-780. This statute provides that "[o]nly those persons who are unable to read or write or who are physically unable or incapacitated from preparing a ballot or voting shall be entitled to receive assistance of any kind in voting." In additional to the relevant allegations above, the specific allegations with respect to this challenge are:

(1)    The statutory restriction that only "those persons who are unable to read or write or who are physically unable or incapacitated from preparing a ballot or voting," conflicts with

Section 208, because "disability" under federal law was intended to include voters with non-physical impairments or disabilities. Compl. ¶¶ 6, 53, 83, 84.

(2)     Ms. Jenkins has a nonphysical disability in addition to her physical disability. Compl. ¶ 28.

(3)     "Even voters who have physical disabilities but who are not 'physically unable or incapacitated from preparing a ballot or voting' are barred from receiving any assistance under South Carolina law, including Mr. Caldwell and Mr. Bell . . . have physical disabilities that they do not believe render them completely physically incapacitated from voting." Compl. ¶ 55.

## C.     "Limits on Possible Assistors"

Finally, the Complaint argues against the so-called "Limits on Possible Assistors." The Complaint alleges that Section 208 only excluded two groups of individuals: (1) a voter's employer or agent of that employer; and (2) an officer or agent of the voter's union, from providing assistance. Compl. ¶ 57. It claims that sections 7-15-310(7), 7-15-330(A), (C), (F), and 7-15-385(A)(3), (G) are preempted by Section 208 because they further limit the possible assistors beyond those two groups specified in federal law. Compl. ¶¶ 57, 58, 62, 63.

The Complaint further alleges that many South Carolina voters needing assistance wish to rely on a person other than their "immediate family" to request or return their absentee ballot, but they are forced to by South Carolina law which makes it a felony in many cases. S.C. Code Ann. §§ 7-15-330(A), (C); 7-15-385(A)(3). Compl. ¶¶ 60-61.

The Complaint also claims that under section 7-15-310(7),

[v]oters with disabilities can [only] rely on an 'authorized representative' for assistance requesting or returning their absentee ballot only if they: (a) are confined to a hospital, nursing home, residence, or somewhere similar, (b) have a physical disability which renders transportation to a polling place impossible, or (c) are physically incapable of accessing voting spaces because of architectural barriers.

Compl. ¶ 62.

The Complaint also protests that an "authorized representative" must be registered to vote in South Carolina under sections 7-15-310(7), § 7-1-20(14), because some individuals who need voter assistance would prefer to rely on are not those who are not registered to vote in South Carolina. Compl. ¶¶ 63, 64.

### Legal Standard

"The power of federal courts to entertain suits is circumscribed by Article III of the United States Constitution, which limits judicial authority to 'Cases' and 'Controversies.'" *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992)). "'The doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process,' and thus meet the requirements of Article III." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990)). "This is no 'troublesome hurdle' to be cleared with the most whimsical of attempts on the way to the merits." *State of Maryland v. U.S. Dep't of Agriculture*, 151 F.4th 197, 208 (4th Cir. 2025) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)). "Rather, Article III standing is an integral component of our nation's system of checks and balances and a key mechanism of judicial restraint." *Id.*

"Standing implicates the court's subject-matter jurisdiction and may be challenged in a motion to dismiss under Rule 12(b)(1) . . . ." *Meyer v. McMaster*, 394 F. Supp. 3d 550, 558 (D.S.C. 2019) (internal citation omitted). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it." *Career Counseling Inc. v. Amerifactors Fin. Frp., LLC*, 509 F. Supp. 3d 547, 553 (D.S.C. 2020). Federal courts must "presume that a cause lies outside [their] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011) (en banc) (cleaned up), *abrogated on other grounds*, *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*,

683 F.3d 577, 580 (4th Cir. 2012). "[T]he party invoking the jurisdiction of the court bears the burden of establishing standing." *Bishop*, 575 F.3d at 424 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

"A defendant may challenge subject-matter jurisdiction in one of two ways: facially or factually." *Beck v. McDonald,* 848 F.3d 262, 270 (4th Cir. 2017) (internal citation omitted). "In a facial challenge, the defendant contends that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* (cleaned up). "Accordingly, the plaintiff is afforded the same procedural protection as [it] would receive under a Rule 12(b)(6) consideration, wherein the facts alleged in the complaint are taken as true, and the defendant's challenge must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* (cleaned up). "While courts generally do not consider extrinsic evidence when considering a facial attack, they may consider 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Sanders v. United States*, 493 F. Supp. 3d 470, 482 (D.S.C. 2020) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Additionally, the Court need not "take account of allegations in the complaint labeled as fact but that constitute nothing more than 'legal conclusions' or 'naked assertions.'" *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). And a Court is "powerless to create [its] own jurisdiction by embellishing otherwise deficient allegations of standing." *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,* 713 F.3d 175, 182 (4th Cir. 2013)) (citing *Whitmore,* 495 U.S. at 155–56).

In a factual challenge to subject matter jurisdiction, the defendant contends "that the jurisdictional allegations of the complaint are not true." *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009) (cleaned up). "If the defendant challenges the factual predicate of subject matter

jurisdiction, a trial court may then go beyond the allegations of the complaint and . . . determine if there are facts to support the jurisdictional allegations." *Id.* (cleaned up).

Here, the SEC Defendants are *facially* challenging subject matter jurisdiction on all Plaintiffs' claims. The SEC Defendants are *factually* challenging subject matter jurisdiction on Plaintiffs' challenge to the "Limits on Voting Assistance Eligibility" statute, section 7-13-780.

**Discussion**

1.     **Plaintiffs lack Article III standing to bring this action and the case should be dismissed.**

Requiring a litigant to have Article III standing "prevent[s] the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty International USA*, 568 U.S. 398, 408 (2013). It means "to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (quoting *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423 (2021)). A plaintiff "must be able to sufficiently answer the question: 'What's it to you?'" *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 420 (4th Cir. 2025) (citing *TransUnion*, 594 U.S. at 423).

"To establish standing, a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Hippocratic Med.*, 602 U.S. at 380. Because these three elements of standing

> are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

*Lujan*, 504 U.S. at 562.

Also, "standing is not dispensed in gross." *Murthy v. Missouri,* 603 U.S. 43, 61 (2024) (citing *TransUnion*, 594 U.S. at 431). This means that "*plaintiffs must demonstrate standing for each claim* that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion,* 594 U.S. at 431 (emphasis added) (internal citation omitted). Where (as here) there are multiple plaintiffs, "at least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (cleaned up).

## A.    The NAACP lacks standing.

The NAACP is an organization which has members. Compl. ¶ 17. An organizational plaintiff can demonstrate Article III standing in two ways: "either in [its] own right or as a representative of [its] members." *Maryland Election Integrity, LLC v. Maryland State Bd. of Elections*, 127 F.4th 534, 538 (4th Cir. 2025) (internal citation and quotation marks omitted).

### *i.    The NAACP has not pleaded that it has organizational standing.*

The NAACP has not alleged that it has organizational standing. Organizational standing is "standing to sue on [its] own behalf for injuries [it has] sustained." *Hippocratic Med.*, 602 U.S. at 393 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, n. 19 (1982)). To make the required showing, an organization "must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id.* at 393–94.

Nothing in the Complaint[4] can be interpreted as alleging the NAACP has suffered injuries to the organization because of application or enforcement of any of the Challenged Statutes. Without any such allegations, the NAACP cannot possibly have organizational standing. *See*

---

[4] The Complaint makes several allegations describing the NAACP's branches and membership in South Carolina, Compl. ¶¶ 17-18, its organizational goals, Compl. ¶ 19, and a generalized description of injuries purportedly sustained by its members. Compl. ¶ 20.

*Maryland Election Integrity,* 127 F.4th at 537 (holding "Plaintiffs could not seek relief for injuries to themselves as organizations because they did not allege any injury to their organizational activities"). This leaves associational standing as the only possibility for the NAACP to have standing.

### ii.     *The NAACP does not have associational standing.*

Nor does the NAACP have associational standing. To demonstrate associational standing, the NAACP must show, *inter alia*, that "its members would otherwise have standing to sue in their own right." *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) (citing *Hunt v. Washington State Apple Adver. Commission,* 432 U.S. 333, 343 (1977)). "[T]o show that its members would have standing, an organization must 'make specific allegations establishing that at least one *identified member* had suffered or would suffer harm.'" *Southern Walk*, 713 F.3d at 184 (quoting *Summers v. Earth Island Inst.,* 555 U.S. 488, 498 (2009)).[5]

While three Individual Plaintiffs are parties to this action, the Complaint only alleges that one of them (Mr. Caldwell) is a member of the NAACP. Compl., ¶ 21. Thus, the NAACP's ability to show associational standing hinges on whether Mr. Caldwell has standing. *See Lane*, 703 F.3d at 674 ("Because [the identified members of the organization] do not have standing to sue, it follows that [the organization] does not have associational standing"). For reasons discussed

---

[5] *See also S.C. State Conf. v. Georgetown Cnty.*, No. 2:22-CV-04077-BHH, 2025 WL 3719614, at *3 (D.S.C. Dec. 23, 2025) ("Associational standing requires the NAACP Plaintiffs to identify a specific member who 'would otherwise have standing to sue in [his] own right.'") (*quoting Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023)); *Pickens Cnty. Branch of NAACP v. Sch. Dist. of Pickens Cnty.*, No. 8:23-CV-01736-JDA, 2025 WL 2844248, at *10 (D.S.C. Oct. 7, 2025) ("[T]he injury-in-fact requirement … for associational standing is an Article III necessity for an association's representative suit.") (quotation marks omitted) (*citing United Food & Com. Workers Union Loc. 751 v. Brown Grp.*, 517 U.S. 544, 555 (1996)).

*infra*, Mr. Caldwell does not have standing, which necessarily means the NAACP does not have associational standing.

**B.    None of the Individual Plaintiffs have standing to bring their claims.**

*i.    The Individual Plaintiffs do not have a legally cognizable injury in fact.*

Injury in fact is the "first and foremost" of Article III's standing requirements. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (cleaned up).[6] To be legally cognizable under Article III, an injury in fact must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

As a first point, "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *N. Virginia Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 489 (4th Cir. 2025) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *see also United States v. South Carolina*, 906 F. Supp. 2d 463, 473 (D.S.C. 2012), *aff'd,* 720 F.3d 518 (4th Cir. 2013) ("Although some of the private Plaintiffs may be unlawfully present in the United States, none has pleaded a realistic danger of sustaining injury through the application of Section 7(E)").

Second, to support standing, an alleged "injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Hippocratic Med.*, 602 U.S. at 381 (*citing Clapper*, 568 U.S. at 409). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." *Beck*, 848 F.3d at 271 (citing *Lujan*, 504 U.S. at 564–65). Moreover, the Supreme Court has "repeatedly reiterated

---

[6] *See also* 13A Fed. Prac. & Proc. Juris. § 3531.4 (3d ed.) (stating an injury in fact is "the central focus" of a standing inquiry).

that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (citing *Whitmore*, 495 U.S. at 158).

In this case, no plaintiff has or can plausibly allege a "realistic danger" they will be injured in the future if the Challenged Statutes are in place, *see N. Virginia Hemp,* 125 F.4th at 489, nor have or could they allege a "certainly impending" future injury, *see Clapper*, 568 U.S. at 409. The deficiencies of the Plaintiffs' allegations on these points is most immediately apparent on the challenges to the "Limits on Voting Assistance Eligibility" statute and the "Limits on Possible Assistors" statutes.

The only allegations in either of these two categories which specifically relate to the Individual Plaintiffs are the allegations on the "Limits on Voting Assistance Eligibility" statute that (1) "Mr. Caldwell and Mr. Bell … have physical disabilities that they do not believe render them completely physically incapacitated from voting," *see* Compl. ¶ 55; and that (2) Ms. Jenkins has a nonphysical disability, in addition to her physical disability. *See* Compl. ¶ 28.

Notably, as reflected in the SEC's Poll Managers Handbook, the SEC does not interpret section 7-13-780 to deny *anyone* with physical disability an assistor of their choice. See Poll Managers Handbook, September 2024 Edition[7] ("[A]ny voter who requires assistance to vote by

---

[7]    *See*    https://scvotes.gov/wp-content/uploads/2024/10/scec_11854_24_2024-Poll-Managers-Handbook_Web_06.pdf at p. 65 (accessed Jan. 20, 2026). As stated *supra*, the SEC Defendants are challenging this particular portion of the allegations factually (as well as facially). Thus, this Court is able to review the "trial court may then go beyond the allegations of the complaint and . . . determine if there are facts to support the jurisdictional allegations." *Kerns,* 585 F.3d at 192 (cleaned up). But even if this were considered a facial challenge, the Court could still review the Poll Manager's Handbook because it is a record subject to judicial notice and because it was specifically referenced in the Complaint. *See United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (stating courts "routinely take judicial notice of information contained on state and federal government websites."); *Sanders*, 493 F. Supp. 3d at 482 (explaining that in a facial attack on subject matter jurisdiction, courts "may consider documents incorporated into

reason of blindness, disability, or inability to read or write may be given assistance by a person

of the voter's choice, other than the voter's employer or agent of that employer or officers or

agent of the voter's union (§7-13-780, Section 208 of the 1965 Voting Rights Act)." As this

guidance document reflects, the SEC does not interpret section 7-13-780 to say anything different

than Section 208. These Individual Plaintiffs have alleged they are disabled, *see* Compl. ¶¶ 22,

25, 28, and assuming they are, they unquestionably have a right to voter assistance under section

7-13-780 under the SEC's interpretation. Thus, even if the Plaintiffs are arguing that the statute

might hypothetically be interpreted in a way contrary to the SEC's interpretation, they cannot

"demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation

or enforcement" under these circumstances. *See N. Virginia Hemp*, 125 F.4th at 489. Moreover,

Article III does not permit Plaintiffs to manufacture a controversy in this way. See *Murthy*, 603

U.S. at 73 ("[P]laintiffs cannot manufacture standing merely by inflicting harm on themselves

based on their fears of hypothetical future harm that is not certainly impending.") (quotation

marks omitted) (*citing Clapper*, 568 U.S. at 416).

Other than the allegations just discussed, none of allegations in the "Limits on Voting

Assistance Eligibility" or "Limits on Possible Assistors" categories implicate the rights of any

Individual Plaintiff. More specifically:

---

the complaint by reference, and matters of which a court may take judicial notice.") (internal
citation and quotation marks omitted); *Barnett v. United States*, 650 F. Supp. 3d 412, 440 (D.S.C.
2023), *aff'd,* 132 F.4th 299 (4th Cir. 2025), and *aff'd,* 132 F.4th 299 (4th Cir. 2025) ("[A] court
may take judicial notice of a fact at any stage in the proceeding . . . .") (citing Fed. R. Evid. 201(f)
advisory committee note); Compl., ¶ Prayer For Relief, subparagraph (f) (requesting that this
Court "Order Defendant [ ] Wooten to supervise the revision of the State Election Commission's
Poll Manager's Handbook in accordance with this Court's equitable relief, and order all
Defendants to issue corrective instructions and guidance to relevant State, county, and local
officials informing them of this Court's equitable relief").

(1)    The Complaint complains that section 7-13-780 bars voting assistance to "voters with non-physical impairments" and "[v]oters who do not have physical disabilities but have other forms of disabilities who rely on assistance to vote." *See* Compl. ¶¶ 53, 54. But these Individual Plaintiffs allege they are physically disabled. *See* Compl. ¶¶ 22, 25, 28. Even if it is alleged that Ms. Jenkins also has a nonphysical disability, *see* Compl. ¶ 28, no plaintiff in this case alleges that they have "other forms of disabilities" but not "physical disabilities." In other words, no Individual Plaintiff can say that this statute affects their eligibility for voting assistance at all.

(2)    The Complaint alleges "[t]he limited class of people with acute physical disabilities legally permitted to request an absentee application face a gauntlet of legal restrictions on who they may choose as an assistor to request," citing to various statutes. *See* Compl. ¶ 58. However, these Individual Plaintiffs have each named specific individuals (Ms. Gaither and Ms. Allen) to assist them in voting. There is no allegation that Mr. Caldwell is restricted from choosing Ms. Gaither as an assistor, nor that Mr. Bell or Ms. Jenkins are restricted from choosing Ms. Allen as an assistor, because of the implementation or enforcement of any of the Challenged Statutes.

(3)    The Complaint protests generally about statutes which require an "immediate family" member to assist a voter in voting when they would rather be helped by a non-family member. Compl. ¶¶ 60-64. But the Individual Plaintiffs here have each named specific non-family members (Ms. Gaither and Ms. Allen)[8] as their preferred assistors, and there is no controversy that any of the Challenged Statutes prevents them from doing so.

---

[8] The Complaint contains no allegations that Ms. Gaither or Ms. Allen are immediate family members of any of the Individual Plaintiffs.

65140268 v1

(4)    The Complaint complains generally about the definition of "authorized representative" in section 7-15-310(7), even though neither of the alleged problems with this definition apply to the Individual Plaintiffs.

(5)    The Complaint generally complains that an "authorized representative" must be registered to vote in South Carolina. Compl. ¶¶ 64-65. There are no allegations that this is an issue for Ms. Gaither and Ms. Allen.

(6)    The Complaint also complains that "[v]oters with disabilities can rely on an 'authorized representative' for assistance requesting or returning their absentee ballot only if they" fit into three categories, including that they "(a) are confined to a hospital, nursing home, residence, or somewhere similar." Compl. ¶ 62. Beyond question, based on their allegations, the Individual Plaintiffs "are confined to a hospital, nursing home, residence, or somewhere similar." *See* Compl. ¶¶ 24, 25, 27.

In sum, none of these allegations plausibly seek to vindicate any rights of the Individual Plaintiffs, but instead the rights of persons who are not parties in this action and not before the Court. However, "Article III does not give federal courts the power to order relief to any uninjured plaintiff . . . ." *TransUnion*, 594 U.S. at 431 (2021) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C. J., concurring)); *see also State of Maryland*, 151 F.4th at 210 (holding that "an uninjured plaintiff may not bypass the standing requirement to ensure a defendant's compliance with regulatory law") (cleaned up). Rather, "[t]he Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it." *Gill v. Whitford*, 585 U.S. 48, 72 (2018). For these reasons, the preceding allegations cannot support Plaintiffs' standing.

While the allegations regarding the so-called "Five-Voter Limits" come closer than the others, they still do not meet the threshold for standing. To start, the term "Five-Voter Limits" is a misnomer that does not recognize the narrow reach of sections 7-15-330(B)(4) and 7-15-385(G). A close review of each of these statutes shows that the numerical limitation on assistance only relates to the *requesting* or *returning* of an absentee ballot, not to assistance with the voting process in general. This narrower reading of the statutes is also supported by the Title of the Act of the South Carolina General Assembly enacting these statutes, which states these provisions were

> [R]ELATING TO THE TIME OF APPLICATION FOR ABSENTEE BALLOTS AND APPLICATION IN PERSON, SO AS TO DEFINE THE PARAMETERS BY WHICH A PERSON MAY *REQUEST* AN APPLICATION TO VOTE BY ABSENTEE BALLOT FOR HIMSELF OR OTHERS, TO PROVIDE FOR VERIFICATION OF THE INFORMATION REGARDING THE ELECTOR, TO PROVIDE THAT NO MORE THAN FIVE APPLICATIONS MAY BE *REQUESTED* IN ADDITION TO THE REQUESTOR HIMSELF, AND TO PROVIDE THE TIMEFRAME THAT THE APPLICATIONS MUST BE *RETURNED* BY . . .; [and]
>
> [R]ELATING TO THE MARKING *AND RETURN OF ABSENTEE BALLOTS*, SO AS TO REQUIRE AN AUTHORIZED *RETURNEE* TO PRODUCE A CURRENT AND VALID FORM OF GOVERNMENT-ISSUED PHOTO IDENTIFICATION AND TO PROVIDE IT IS UNLAWFUL FOR A PERSON *TO RETURN* MORE THAN FIVE ENVELOPES IN AN ELECTION IN ADDITION TO HIS OWN AND PROVIDE A PENALTY . . . ."

2022 Act No. 150 (S.108), §§ 5, 7, effective May 13, 2022 (emphasis added).[9] While these statutes are not ambiguous at all, even if they were, the title of a legislative enactment can reflect on legislative intent. *Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004). Here, the South

---

[9] *See* https://www.scstatehouse.gov/sess124_2021-2022/bills/108.htm (accessed Jan. 20, 2026). The Court can take judicial notice of this legislative enactment. *See Abie State Bank v. Weaver*, 282 U.S. 765, 777 (1931) (federal courts can take judicial notice of the acts of state legislatures); *Garcia*, 855 F.3d at 621 (courts "routinely take judicial notice of information contained on state and federal government websites").

Carolina General Assembly clearly intended these provisions only related to the **_requesting_** or **_returning_** of an absentee ballot.

Accordingly, allegations such as those related to Mr. Bell that there are only "five voters for Ms. Allen to help in the 2026 elections," Compl. ¶ 76, or that "Ms. Gaither is prohibited by South Carolina law from helping more than five residents per election," Compl. ¶ 72, are insufficiently specific and not plausible given the limited scope of the statute. Allegations such as the one that Ms. Jenkins "wants assistance with … filling out … her absentee ballot," Compl. ¶ 30, simply do not fit the statute at all. [10] And the same is true of the allegations which conflate the broad concept of "voting assistance" with the narrow acts of "requesting" or "returning" absentee ballots. *See*, *e.g.*, Compl. ¶ 9 (alleging the Five-Voter Limits "prevent Plaintiffs and other voters from relying on **_voting assistance_** from the person of their choice, such as staff at nursing homes and other congregate care facilities.") (emphasis added); Compl. ¶ 24 (alleging Mr. Caldwell wants assistance with **_requesting and returning his absentee ballot,_**" but then claiming harm from the Five-Voter Limits because "**_many residents_** at MUSC Chester **_seek to rely on Ms. Gaither for voting assistance_** ….") (emphasis added); *see also* Compl, ¶ 26 (making similar allegations for Mr. Bell); Compl. ¶ 30 (making similar allegations for Ms. Jenkins).

Particularly in light of the narrow scope of S.C. Code Ann. §§ 7-15-330(B)(4) and 7-15-385(G), none of this alleges a harm that is "concrete." *See O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 242 (4th Cir. 2023) ("No concrete harm, no standing") (citing *TransUnion*, 594 U.S. at 442). A "concrete injury is 'de facto,' meaning that 'it must actually exist' and is 'real, and not

---

[10] Mr. Caldwell specifically desires assistance from Ms. Gaither with "requesting and returning his absentee ballot." Compl, ¶ 24. However, Ms. Jenkins "wants assistance with requesting, **_filling out_**, and returning her absentee ballot," Compl. ¶ 30 (emphasis added), and the scope of Mr. Bell's desired assistance is stated more generally. Compl. ¶¶ 26, 76.

abstract.'" *Dreher v. Experian Info. Sols., Inc.,* 856 F.3d 337, 344 (4th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), *as revised* (May 24, 2016)). Without some credible allegation the statute will operate to their disadvantage, Plaintiffs cannot show standing. Rather, they allege "merely a claim of 'the right, possessed by every citizen, to require that the Government be administered according to law....'" *Bishop*, 575 F.3d at 424 (quoting *Baker v. Carr,* 369 U.S. 186, 208 (1962)). "This type of abstract, generalized interest clearly fails to meet the requirement that an injury be concrete and particularized." *Id.*[11]

As demonstrated above, the "Five-Voter Limits" claims also rest on speculation and conjecture. *See Clapper,* 568 U.S. at 414 (rejecting standing theory premised on a "speculative chain of possibilities [which] does not establish" an alleged future injury is "certainly impending."). As noted, the Complaint alleges in a conclusory fashion that Mr. Caldwell, Mr. Bell, or Ms. Jenkins will not be able to use Ms. Gaither or Ms. Allen to help with requesting or returning their absentee ballots, simply because other residents in their facility will be using Ms. Gaither or Ms. Allen for voting assistance, *i.e.*, that they will not be one of the five. Compl. ¶¶ 9, 24, 26, 30. "However, saying it does not make it so." *Castro v. Trump,* No. CV 3:23-4501-MGL-SVH, 2024 WL 1051115, at *6 (D.S.C. Feb. 12, 2024), *R&R adopted sub nom. Castro v. Knapp,* No. CV 3:23-4501-MGL, 2024 WL 1374720 (D.S.C. Apr. 1, 2024). To accept these conclusions as plausible requires more supporting facts than the Complaint provides, including how many residents will specifically require assistance from Ms. Gaither or Ms. Allen with ***requesting*** and ***returning*** their absentee ballot, the factual predicate for that information, and non-conclusory

---

[11] Without question, "'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Maryland Election Integrity*, 127 F.4th at 539 (quoting *Gill*, 585 U.S. at 65). But here, the Complaint does not credibly allege that the Five-Voter Limits jeopardizes any Individual Plaintiff's right to exercise the franchise, nor even their right to have an assistor help them in the voting process.

allegations on why Individual Plaintiffs are so sure that other residents will receive assistance from Ms. Gaither or Ms. Allen as a priority over them.[12]

Moreover, both of these statutes have been in place since May 2022, thus were effective for the primaries and general elections in 2022 and 2024.[13] Yet, even as the Complaint alleged that "[i]n the past, Mr. Caldwell has relied on MUSC Chester staff to assist him with requesting and returning his absentee ballot," Compl. ¶ 23, there are no allegations about Mr. Caldwell having issues with the Five-Voter Limits statutes in the past such that might attempt to provide a justification for the forward-looking relief he seeks, *see Wells v. Johnson*, 150 F.4th 289, 300 (4th Cir. 2025) ("A plaintiff may use past injury to justify forward-looking relief, but forward-looking relief remedies only future or ongoing injuries.") (citing *Murthy*, 603 U.S. at 59)).

In sum, the allegations that the Individual Plaintiffs will be harmed by the Five-Voter Limits statutes are not concrete, are conjectural and speculative, and are, therefore, insufficient to state an injury in fact. Accordingly, the Court should find the Individual Plaintiffs lack standing, and dismiss the lawsuit entirely.

### ii.     *Plaintiffs have not alleged a redressable right to seek declaratory or injunctive relief.*

Plaintiffs also lack standing because they cannot establish "a non-speculative likelihood that the [alleged] injury would be redressed by a favorable decision." *Justice 360 v. Stirling*, 42 F.4th 450, 459 (4th Cir. 2022) (alteration in original). "Under black-letter standing doctrine, a

---

[12] While the Complaint alleges that Mr. Bell is not prioritized by Union Post Acute in voting because he has family members help him and worries about whether those "family members will help him fill out his forms and ballot properly and return his ballot on time," Compl. ¶ 76, these allegations are conclusory and not supported by any facts. Moreover, even if they were true, they would raise a causation problem because the cause of Mr. Bell not receiving Ms. Allen's assistance in that instance would not be the Five-Voter Limits statutes, but the Union Post Acute's policies and Mr. Bell's family members' unreliability in providing assistance.

[13] *See* https://www.scstatehouse.gov/sess124_2021-2022/bills/108.htm (accessed Jan. 20, 2026).

plaintiff must demonstrate 'that [its] injury likely would be redressed by the requested judicial relief.'" *State of Maryland*, 151 F.4th at 211 (quoting *Hippocratic Med.*, 602 U.S. at 380).

Here, none of the Plaintiffs are entitled to the declaratory or injunctive relief, which are both forms of forward-seeking relief. Whenever a plaintiff seeks "forward-looking relief, they must face a real and immediate threat of repeated injury." *Murthy*, 603 U.S. at 44 (citation and quotation marks omitted); *see also Hippocratic Med.*, 602 U.S. at 381 ("[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury") (citing *Clapper*, 568 U.S. at 401); *State of Maryland*, 151 F.4th at 209 ("Prospective relief must instead be justified by prospective injury.") (citing *Hippocratic Med.*, 602 U.S. at 381).

For the reasons discussed *supra*, the Complaint does not adequately allege a sufficient likelihood that Plaintiffs will sustain a future injury. For this additional reason, Plaintiffs have not adequately alleged that they have standing.[14]

### Conclusion

For the foregoing reasons, the Complaint fails to adequately allege an injury in fact or a redressable right to relief to the Individual Plaintiffs. Thus, the Individual Plaintiffs lack standing. And because the only member of the NAACP identified in the Complaint lacks standing, the NAACP lacks associational standing as well. The Court should dismiss this action.

[*Signature Page Follows*]

---

[14] Although it is not the situation here, "'[r]edressability can still pose an independent bar' even where 'the defendant has directly injured the plaintiff.'" *Id.* (quoting *Hippocratic Med.*, 602 U.S. at 381 n.1).

Respectfully submitted,

*s/ Michael R. Burchstead*
Mary Elizabeth Crum (Fed. ID No. 372)
Tracey C. Green (Fed. ID No. 6644)
Michael R. Burchstead (Fed. ID No. 102967)
BURR & FORMAN LLP
Post Office Box 11390
Columbia, SC 29211
(803) 799-9800
lcrum@burr.com
tgreen@burr.com
mburchstead@burr.com

Thomas W. Nicholson (Fed. ID No. 12086)
STATE ELECTION COMMISSION
1122 Lady Street, Suite 500
Columbia, SC 29201
(803) 734-9063
tnicholson@elections.sc.gov

*Counsel for Defendants Jenny Wooten, JoAnne Day, Clifford J. Edler, Linda McCall, and Scott Moseley*

January 20, 2026
Columbia, South Carolina

65140268 v1