IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| NAACP SOUTH CAROLINA STATE CONFERENCE; ROBERT CALDWELL; JONATHAN BELL; SHERRY JENKINS,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALAN WILSON, in his official capacity as the South Carolina Attorney General; JENNY WOOTEN, in her official capacity as Interim Executive Director of the State Election Commission; DENNIS W. SHEDD, in his official capacity as Chairman of the State Election Commission; JOANNE DAY, CLIFFORD J. ELDER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the State Election Commission,<br><br>*Defendants*. | Civil Action No.: 3:25-cv-13754-MGL<br><br>**REPLY OF ATTORNEY GENERAL WILSON IN SUPPORT OF MOTION TO DISMISS** |

**INTRODUCTION**

Although Plaintiffs suggest they have "allege[d] three straightforward conflict preemption claims," (ECF No. 21 at 1)[1], a careful inspection of their Complaint and relevant authorities indicates quite the opposite. Indeed, Plaintiffs' Complaint is replete with a variety of defects, including jurisdictional defects and incorrect statements of the law. These defects warrant dismissal by this Court for multiple reasons.

---

[1] All citations to ECF No. 21 herein refer to page numbers found at the bottom of each page.

1

# ARGUMENT

**I.       Plaintiffs' Response underscores the deficiencies in Plaintiffs' standing arguments.**

To sufficiently allege standing in the context of their preemption claims, Plaintiffs must show that they are entitled to the assistance they seek under Section 208 of the VRA and that state law prohibits them from receiving that assistance. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) ("In all pre-emption cases, ... we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (citation modified).

Plaintiffs' Response generally concedes the necessity of this showing. *See* (ECF No. 21 at 8) ("Each Plaintiff pled that they have disabilities that cause them to require assistance in requesting, completing, and returning their ballots; that South Carolina law prevents them from either receiving that assistance altogether or receiving it from the person of their choice without the credible threat of criminal penalties; and that declaring the Voting Restrictions null and void and enjoining Defendants from enforcing them will remediate that injury.").

For all the reasons outlined in the Motion to Dismiss, Plaintiffs' Complaint fails to make this showing. Plaintiffs' response only underscores many of these deficiencies, which are considered on a claim-by-claim basis below.

**A. Voting Assistance Eligibility**

With the above framing in mind, to have standing to assert their Voting Assistance Eligibility claim, Plaintiffs would need to show that: (1) they are entitled to assistance under Section 208 of the VRA and (2) South Carolina law otherwise denies them assistance.

Taking those issues in reverse order, all three Individual Plaintiffs have failed to allege facts sufficient to show that they have been denied assistance under South Carolina law. This deficiency alone should foreclose their Voting Assistance Eligibility Claim.

And while Plaintiffs Bell and Caldwell speculate that they could be denied assistance under South Carolina law because they do not view themselves as "physically [] incapacitated" under state law, this speculation is insufficient to establish standing. For one, Plaintiffs' Complaint does not allege that Plaintiffs Bell and Caldwell are not physically incapacitated for purposes of South Carolina law. Plaintiffs' Response attempts to recharacterize their Complaint as alleging as much, but this characterization rewrites the facts alleged in Plaintiffs' Complaint. *Compare* (ECF No. 21 at 10) ("Therefore, the plain text of Section 7-13-780 prohibits voters with disabilities covered by Section 208 like Plaintiffs Bell and Caldwell from receiving 'assistance of any kind in voting' because they are not 'physically unable or incapacitated from preparing a ballot.'"), *with* (ECF No. 1 at 11, ¶ 55) ("Even voters who have physical disabilities but who are not 'physically unable or incapacitated from preparing a ballot or voting' are barred from receiving *any* assistance under South Carolina law. *Id*. This includes Plaintiffs Mr. Caldwell and Mr. Bell, who have physical disabilities that they do not believe render them completely physically incapacitated from voting.") (emphasis in original).

Turning to their eligibility for assistance under Section 208 of the VRA, Plaintiffs' Complaint fails to allege facts sufficient to show that Plaintiffs Bell and Caldwell's alleged disabilities entitle them to assistance under the VRA.[2]

---

[2] On the one hand, Plaintiffs seem to argue that Section 208 broadly guarantees voting assistance to anyone with virtually any kind of disability, even if the disability doesn't prevent a person from voting. (ECF No. 1 at 10–11, ¶ 52). And they argue South Carolina law impermissibly narrows the scope of assistance because it more clearly designates the availability of voting assistance to only those who need it because of a physical disability. (ECF No. 1 at 11, ¶ 56). But there is no conflict

The plaint text of Section 208 of the VRA imposes a nexus requirement between a voter's disability and a need for assistance to vote. *See* 52 U.S.C. § 10508 ("Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.").

Tellingly, Plaintiffs' Response does not engage with this statutory text and instead attempts to quote excerpts from the Complaint to demonstrate a causal connection. *See* (ECF No. 21 at 8) ("Mr. Caldwell alleges that he had a stroke and 'largely lost use of his legs, and now relies on a wheelchair to get around,' and requires 'an assistor to vote because of these disabilities.'") (quoting Compl. ¶¶ 22–23).

But a closer inspection of the Complaint reveals no such causal allegations. For Plaintiff Caldwell, the Complaint alleges only a legal conclusion—that Mr. Caldwell is entitled to assistance under the VRA—and alleges no actual causation. *See* (ECF No. 1 at 5, ¶ 22) ("Because of his disability, Mr. Caldwell is afforded an assistor of his choice throughout the voting process under Section 208 of the VRA."). In contrast, the Complaint does allege such a causal connection for Plaintiff Jenkins. *See* (ECF No. 1 at 6, ¶ 28) ("Ms. Jenkins has both physical and nonphysical disabilities. Ms. Jenkins has osteoporosis, scoliosis, an optic nerve impairment, and macular degeneration. She relies on a wheelchair to get around and, because of her vision impairment, requires assistance with reading and filling out paperwork."). While South Carolina law would not prevent a blind person from receiving voting assistance, at least Plaintiffs allege that Ms. Jenkins

---

between Section 208 and South Carolina law; they both limit voting assistance to those who need it due to physical disabilities that prevent people from voting. And Plaintiffs can't have it both ways—either they are entitled to assistance under federal law and state law or they are entitled to assistance under neither.

4

has a disability that's covered by Section 208. In short, Plaintiffs are able to allege causation where appropriate. They simply have failed to do so for Plaintiffs Bell and Caldwell.

To support their argument that the Individual Plaintiffs have standing to sue, Plaintiffs also cite numerous cases from outside jurisdictions. But none of them are availing.

In *League of Women Voters of Ohio v. LaRose*, no party challenged the standing of the sole individual plaintiff. 741 F. Supp. 3d 694, 706 (N.D. Ohio 2024). And even if they had, the individual plaintiff's condition was materially different than Plaintiffs Bell and Caldwell in this case. The individual plaintiff in *LaRose* suffered from muscular dystrophy, which rendered here "unable to travel without assistance" and "reli[ant] on her caregivers for daily tasks." *Id.* at 703. Due to the incapacitating nature of muscular dystrophy, it's no surprise that the individual plaintiff's standing was not challenged in *LaRose*.

In *Democracy N. Carolina v. N. Carolina State Bd. of Elections*, an individual plaintiff who was "the only Plaintiff who falls under Section 208" in that case was "blind." 476 F. Supp. 3d 158, 188, 229 (M.D.N.C. 2020). In a subsequent case (also cited by Individual Plaintiffs here), the same blind individual plaintiff sued under Section 208. *Democracy N. Carolina v. N. Carolina State Bd. of Elections*, 590 F. Supp. 3d 850, 856 (M.D.N.C. 2022). While blindness is covered by Section 208, those who are blind are not prevented from receiving assistance under the challenged South Carolina law.

In *Disability Rts. Mississippi v. Fitch,* "[t]he Defendants d[id] not dispute that the individual Plaintiffs ha[d] standing to bring th[at] lawsuit." 684 F. Supp. 3d 517, 520 (S.D. Miss. 2023), *vacated and remanded,* No. 23-60463, 2024 WL 3843803 (5th Cir. Aug. 14, 2024). Even so, the district court's order was ultimately vacated by the Court of Appeals. *Disability Rts. Mississippi v. Fitch*, No. 23-60463, 2024 WL 3843803, at *1 (5th Cir. Aug. 14, 2024).

5

There were no individual plaintiffs in *Alabama State Conf. of the NAACP v. Marshall*, 746 F. Supp. 3d 1203, 1216 (N.D. Ala. 2024). So that doesn't help Individual Plaintiffs here either.

The individual voters in *Nick v. Bethel* were illiterate. No. 3:07-CV-0098 TMB, 2008 WL 11429309, at *4 (D. Alaska July 23, 2008). They were thus covered by both Section 208 and South Carolina law.

In *Carey v. Wisconsin Elections Comm'n*, all four individual plaintiffs suffered from incapacitating physical disabilities that prevented them from voting without assistance. 624 F. Supp. 3d 1020, 1025 (W.D. Wis. 2022). One had "muscular dystrophy, c[ouldn']t move any part of his body without assistance, and [wa]s always attached to a ventilator." *Id*. Another was "paralyzed from the neck down" and "c[ouldn']t move her arms or legs without assistance." *Id*. Yet another "ha[d] muscular dystrophy, and he c[ouldn']t hold a ballot in his hand, place a ballot in a mailbox, or hand a ballot to a municipal clerk." *Id*. The fourth "ha[d] cerebral palsy," "[wa]s paralyzed from the chest down," and "c[ouldn']t hold a ballot in his hand, open the door to deliver it to a mail carrier, place it in a mailbox, or hand it directly to the municipal clerk." *Id*. As in other cases cited by Plaintiffs, the debilitating disabilities here are covered by both Section 208 and South Carolina law.

Not so with Plaintiffs Bell and Caldwell. When discussing the standing of Plaintiffs Bell and Caldwell, Plaintiffs admit that the injury-in-fact component of standing includes an "objective component" that requires an allegation that the plaintiffs intend to "engage in legally protected conduct." (ECF No. 21 at 12). Yet they fail to sufficiently allege that as to Bell and Caldwell. Section 208 does not guarantee voting assistance rights to those who are in a wheelchair but are able to request, complete, and submit a ballot. As a result, not only have Plaintiffs Bell and Caldwell failed to allege that they have been injured, they have also failed to sufficiently allege

6

causation and redressability for that non-existent injury. While Plaintiff Jenkins appears to have alleged a disability that would entitle her to assistance under Section 208 due to her vision impairment, she is not prohibited from receiving assistance under South Carolina law.

### B. Limits on Possible Assistors

To have standing to assert their Limits on Possible Assistors claim, Plaintiffs would need to show that (1) Section 208 of the VRA entitles them to the assistor of their choice and (2) South Carolina law otherwise denies them this assistor.

Plaintiffs have again failed to make this showing on both counts. Section 208 does not guarantee a voter "the" person of their choice; it merely guarantees a voter "a" person their choice. *See Priorities USA v. Nessel*, 628 F. Supp. 3d 716, 733 (E.D. Mich. 2022) ("Section 208's natural effect allows some wiggle room: a voter may select 'a person' to assist them, but not *the* person of their choice.") (emphasis in original).

But even if this Court credits Plaintiffs' view of Section 208 for purposes of resolving the motion to dismiss, Plaintiffs have again failed to allege that South Carolina law denies them the ability to seek assistance from the assistor of their choice.

And while Plaintiffs' Response attempts to recharacterize their Complaint as alleging as much, the Complaint itself contains no such allegations. *Compare* (ECF No. 1 at 17–18, ¶¶ 86–92) (generically describing South Carolina law) *with* (ECF No. 21 at 14–15) (suggesting that the Individual Plaintiffs are not confined to a nursing home for purposes of South Carolina law). In fact, Plaintiffs' Complaint assumes that residents of nursing homes could use nursing home employees as assistors. *See* (ECF No. 1 at 13, ¶ 65) (suggesting that nursing home employees could serve as assistors under state law if they are registered to vote in South Carolina).

### C. Five-Voter Limits

To have standing to assert their Five-Voter Limits claim, Plaintiffs would need to show that (1) Section 208 of the VRA entitles them to an assistor of their choice in requesting and returning their ballots and (2) South Carolina law otherwise denies them this assistor. Yet again, Plaintiffs fail to make this showing for multiple reasons.

With respect to Section 208, Plaintiffs' Complaint and Response assume that Section 208 entitles them to an assistor of their choice in requesting and returning their absentee ballots. *See* (ECF No. 1 at 9, ¶ 44) ("Any covered voter is therefore guaranteed an assistor of their choice when they request an absentee ballot application, complete and return the absentee ballot application, and when they fill out and return their absentee ballot."); (ECF No. 21 at 3) (claiming that Section 208 "guarantee[s] disabled voters the right to choose a person to assist them with requesting, completing, and returning an absentee ballot application as well as filling out and returning an absentee ballot itself."). But the plain text of Section 208 says no such thing, and at least one court has expressly rejected Plaintiffs' reading. *See DSCC v. Simon*, 950 N.W.2d 280, 290 (Minn. 2020) ("The Democratic committees contend that section 208 preempts the three-voter limit in section 203B.08 on ballot deliver because the right to vote, they argue, extends to all phases of the voting process, including delivery of a marked ballot. The plain language of section 208 is not as broad as the Democratic committees assert.").

But if this Court credits Plaintiffs' assumption at this phase of the litigation, Plaintiffs have failed to trace their injury to South Carolina law itself. Instead, Plaintiffs' purported injury is traceable to the decision of the requested assistors themselves to deny any assistance to Plaintiffs. And while Plaintiffs suggest this argument "confounds [] logic," (ECF No. 21 at 18), they don't meaningfully engage with the argument beyond suggesting that the requested assistors are acting

8

in predictable ways. But that conclusory allegation hardly meets their difficult burden "to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992).

It remains unchallenged that South Carolina law only limits the number of ballots a person may request or return; it simply does not purport to limit the number of voters a person may help fill out the ballot itself. Therefore, the requested assistors could continue to assist the Individual Plaintiffs and other residents with filling out their ballots, but they would be prohibited from requesting or returning more than five ballots.

Plaintiffs' Complaint demonstrates that such an approach is not impossible. As alleged by Plaintiffs, at least one requested assistor works with residents' "family, friends, or other staff members" to coordinate assistance for residents. (ECF No. 1 at 15, ¶ 72). Those individuals could request and return residents' ballots consistent with state law, while the requested assistor could continue to assist the residents in the act of filling out the ballots.

### D. Plaintiff NAACP South Carolina State Conference

Plaintiff NAACP South Carolina State Conference ("NAACP-SC") argues that it has associational standing to sue here for two reasons. First, one member of NAACP-SC (Plaintiff Robert Caldwell) allegedly has standing. (ECF No. 21 at 19). And second, NAACP-SC alleges that it's claim that "it has other members with similar injuries" is "independently sufficient to establish standing at the pleading stage." (ECF No. 21 at 19). Wrong on both accounts.

First, as noted above, Plaintiff Caldwell does not have standing because he does not allege a disability that would entitle him to voting assistance under Section 208. Additionally, none of the other Individual Plaintiffs are even alleged to be members of NAACP-SC, so they are no help to NAACP-SC in this regard. Second, because Plaintiff Caldwell doesn't have standing, it's no

comfort that NAACP-SC has "other members with similar injuries." (ECF No. 21 at 19). If the NAACP-SC's associational standing relies on the standing of members who have disabilities like Plaintiff Caldwell (which do not prevent individuals from voting), the NAACP-SC does not have associational standing because such disabilities do not confer individual standing on NAACP-SC's members.

## II.     Plaintiffs' Response fails to undermine the other grounds for dismissal.

### A. Plaintiffs lack a cause of action.

Plaintiffs argue that because Section 3 of the Voting Rights Act provides private remedies for violations of some provisions of the Voting Rights Act, then it necessarily follows that Section 3 creates private remedies for Section 208. (ECF No. 21 at 31). But as the Eighth Circuit held in *Arkansas United v. Thurston*, "the view that § 3 implicitly created new private rights of action for every voting-rights statute that did not have one" would require courts to "conclude that Congress hid the proverbial elephant in a mousehole." 146 F.4th 673, 678 (8th Cir. 2025) (citation modified). Indeed, "Congress ... knows how to create a cause of action, and it did not do so here." *Id*.

Arguing in favor of alternative enforcement of Section 208 under 42 U.S.C. § 1983, Plaintiffs argue that privately seeking enforcement of Section 208 would not "thwart any enforcement mechanism that the rights-creating statute contains for protection of the rights it has created." (ECF No 21 at 32) (quoting *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 172 (2023)). Except, "[i]f the text and structure of [§§ 208, 11, and 12] show anything, it is that Congress intended to place enforcement in the hands of the [Attorney General], rather than private parties." *Arkansas United*, 146 F.4th at 678 (citation modified). Thus, private enforcement of Section 208 thwarts the Attorney General's enforcement of the same.

10

Plaintiffs also did not refute Defendants' argument that the Supremacy Clause does not contain an implied right of action. (ECF No. 13 at 16). As such, Plaintiffs concede that "because § 208 has its own enforcement structure," "equitable relief is not available for § 208 under [Supremacy Clause] principles." *Arkansas United*, 146 F.4th at 679.

### B. The Eleventh Amendment bars Plaintiffs' suit.

Plaintiffs argue that the Attorney General "skips past the fact that Plaintiffs are suing him in his official capacity under *Ex Parte Young*." (ECF No. 21 at 32). Not so. In his Motion to Dismiss, the Attorney General specifically contemplated that "Plaintiffs may point to *Ex Parte Young*, 209 U.S. 123 (1908) to argue that they have properly sued state officials in this instance." (ECF No. 13 at 17 n.8). And in doing so, he preemptively rebutted that argument by noting that "Plaintiffs have seemingly failed to point to any ongoing violations of federal law." (ECF No. 13 at 17–18 n.8) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997)) (noting the need to allege "an ongoing violation of federal law.")). Plaintiffs brush off the requirement to allege an ongoing violation of federal law by citing cases where parties brought pre-enforcement challenges. (ECF No. 21 at 35). But Plaintiffs do not bring a pre-enforcement challenge here. Indeed, the laws in question have been on the books for years.

What's more, Plaintiffs have failed to allege a credible threat of enforcement against them. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 47 (2021) (to maintain a suit consistent with *Ex parte Young* and Article III, a plaintiff "must show at least a credible threat of such an action against them."). While the Attorney General is committed to enforcing South Carolina law, Plaintiffs have not alleged any intention of violating any provision of South Carolina law that would result in criminal prosecution against them. The only criminal provisions that Plaintiffs appear to seek to prevent the Attorney General from enforcing are restrictions on requesting or returning absentee

ballots for others. (ECF No. 1 at 20) (asking the Court to "[p]ermanently enjoin Defendant Attorney General Wilson from authorizing or initiating any criminal enforcement of South Carolina Code Section 7-15-330(F) to enforce Sections 7-15-330(A)(2), (B)(4), and (C), Section 7- 15- 385(G), or any other alleged violations of preempted provisions."). And Plaintiffs have not alleged any intention to request or return absentee ballots for others.[3] As such, Plaintiffs have failed to plausibly allege a credible threat of enforcement against them and are not entitled to suit against the Attorney General under *Ex Parte Young*.[4]

### C.  Plaintiffs fail to state a claim.

The Attorney General's Motion to Dismiss also argues that Plaintiffs' apparent facial challenge is not properly supported by an allegation that no set of circumstances exist under which the laws in question would be valid. (ECF No. 13 at 19). In response, Plaintiffs argue that they're not raising a facial challenge, but a preemption challenge that "is not subject to the same legal standard as facial challenges." (ECF No. 21 at 27). But because Plaintiffs seek to enjoin the challenged state laws broadly, which "implicate[s] the enforcement of the law against third parties," such a "preemption theory is properly analyzed as a facial challenge." *Montana Med. Ass'n v. Knudsen*, 119 F.4th 618, 624 (9th Cir. 2024) (citation modified); *see also Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 938 (9th Cir. 2024) ("The *Salerno* rule applies to a

---

[3] In their Response to the Motion to Dismiss, Plaintiffs attempt to remedy the lack of credible threat of enforcement against them by re-casting the allegations in their Complaint. They argue, "[a]s Plaintiffs allege, Compl. ¶¶ 9, 59, another provision of South Carolina election law subjects them to felony prosecution if they pursue ballot assistance as guaranteed by federal law." (ECF No. 21 at 11). But paragraphs 9 and 59 of the Complaint only include mention of possible "felony penalties for anyone who assists more than five voters by requesting or returning an absentee ballot for them," (ECF No. 1 at 3, ¶ 9), and the prospect of Plaintiffs "expos[ing] their assistor—a trusted friend, loved one, or nursing home aide—to steep felony criminal penalties," (ECF No. 1 at 12, ¶ 59). Once again, Plaintiffs fail to allege a credible threat of enforcement against them.
[4] For this same reason, Plaintiffs fail to show that any alleged injuries are traceable to the Attorney General, or that an injunction against him would redress any alleged injuries.

federal preemption facial challenge to a state statute."); *see also Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995) (unanimous opinion) (applying *Salerno* to a federal preemption facial challenge to a state regulation); *see also Ass'n of Am. Railroads v. Hudson*, 144 F.4th 582, 594 (4th Cir. 2025) (discussing the evidentiary standard for proving "facial preemption claims").

And contrary to Plaintiffs' protestations, it does matter at this stage whether Plaintiffs allege a facial challenge. After all, if Plaintiffs raise "facial preemption claims," they must "adequately allege[] this theory in [their] complaint." *Hudson*, 144 F.4th at 594. They have failed to do so here. Plaintiffs "have identified nothing that might allow a federal court to [issue] … an injunction against any and all unnamed private persons who might seek to bring their own" challenges to South Carolina's voting laws. *Whole Woman's Health*, 595 U.S. at 44. That's because "under traditional equitable principles, no court may lawfully enjoin the world at large or purport to enjoin challenged laws themselves." *Id.* (citation modified).

Despite their demand for broad equitable relief, Plaintiffs go so far as to assert that they "are *not* making a facial challenge to the Voting Restrictions." (ECF No. 21 at 27) (emphasis in original). The Court should take them at their word and conclude that Plaintiffs failed to adequately allege claims to the facial relief they ultimately seek.

## CONCLUSION

This Court should dismiss Plaintiffs' Complaint.


[Signature on following page]

Respectfully submitted,

s/ Joseph D. Spate

Alan Wilson
*Attorney General*
Thomas T. Hydrick
*Solicitor General*
Federal Bar No. 13322
Joseph D. Spate
*Deputy Solicitor General*
Federal Bar No. 13100

OFFICE OF THE SOUTH CAROLINA
ATTORNEY GENERAL
1000 Assembly St
Columbia, SC 29201
(803) 734-4127
thomashydrick@scag.gov
josephspate@scag.gov

*Counsel for Alan Wilson, in his official capacity as the South Carolina Attorney General*

February 10, 2026
Columbia, South Carolina