# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| NAACP SOUTH CAROLINA STATE CONFERENCE; ROBERT CALDWELL; JONATHAN BELL; SHERRY JENKINS, <br><br> Plaintiffs, <br><br> v. <br><br> ALAN WILSON, in his official capacity as the South Carolina Attorney General; JENNY WOOTEN, in her official capacity as Interim Executive Director of the State Election Commission; DENNIS W. SHEDD, in his official capacity as Chairman of the State Election Commission; JOANNE DAY, CLIFFORD J. ELDER, LINDA McCALL, and SCOTT MOSELEY in their official capacities as members of the State Election Commission, <br><br> Defendants. | Case No. 3:25-cv-13754-MGL |

### SEC Defendants' Reply to Plaintiffs' Response to Motion to Dismiss

Defendants Jenny Wooten, in her official capacity as Interim Executive Director of the State Election Commission (SEC), Dennis W. Shedd, in his official capacity as Chairman of the State Election Commission,[1] and Joanne Day, Clifford J. Elder, Linda McCall,[2] and Scott Moseley

---

[1] On January 21, 2026, Dennis Shedd resigned his position as Commission Chairman, and Governor Henry McMaster appointed Robert Bolchoz as the new Chairman. *See* https://governor.sc.gov/news/2026-01/gov-mcmaster-appoints-robert-bolchoz-chair-election-commission (accessed February 7, 2026). Plaintiffs have indicated they will soon file a Motion for Substitution of Parties, pursuant to Rule 25(d), FRCP, which would substitute Mr. Bolchoz as a defendant for Judge Shedd.

[2] Linda McCall resigned her position with the Commission on September 22, 2025. The seat she previously occupied is now held by Angela Stringer.

65476239 v1

in their official capacities as members of the State Election Commission (SEC Defendants), hereby submit this Reply to Plaintiffs' Response (ECF No. 21) (Pls.' Response) to the SEC Defendants' Motion to Dismiss, brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[3] To the extent not expressly raised herein, the SEC Defendants incorporate by reference the arguments previously made to the Court in Defendants' Memorandum in Support of its Motion to Dismiss (ECF No. 15-1) (SEC Defs.' Mem.).

## Discussion

**I.    Plaintiffs lack Article III standing to bring these claims.**

As the SEC Defendants previously argued, the Complaint does not adequately allege that the so-called "Five-Voter Limits," "Limits on Voting Assistance Eligibility," and "Limits on Possible Assistors" statutes (Challenged Statutes)[4] harm or threaten to harm the Individual Plaintiffs in any way.[5] The Response presents no meaningful argument to the contrary. Nothing is alleged to demonstrate that the Individual Plaintiffs face a "realistic danger" of future injury if the Challenged Statutes are left in place, *see N. Virginia Hemp & Agric., LLC v. Virginia,* 125 F.4th 472, 489 (4th Cir. 2025), let alone a future injury that is "certainly impending." *See Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013). Because Mr. Caldwell is the only NAACP member identified in the Complaint and he does not have standing, the NAACP cannot

---

[3] The Plaintiffs are the NAACP South Carolina State Conference (NAACP), and Robert Caldwell, Jonathan Bell, and Sherry Jenkins (Individual Plaintiffs).

[4] As with the Memorandum in Support, the SEC Defendants are accepting Plaintiffs' characterization of these statutes only for the purpose of this Reply. This should in no way be construed as admitting these characterizations are accurate.

[5] Plaintiffs suggest that the SEC Defendants did not establish redressability because it was only addressed in a short section of the Memorandum. Pls. Resp. at 17. This is incorrect. The SEC Defendants agree with the Plaintiffs, however, that its redressability arguments overlap with the question of whether Plaintiffs have the requisite injury in fact with respect to any future injuries.

claim associational standing. And because Plaintiffs are not alleging that the NAACP has organizational standing,[6] there are no other methods through which the NAACP can possibly claim standing.

Thus, even "at the pleading stage," where "general factual allegations of injury resulting from the defendant[s'] conduct may suffice," Plaintiffs have not alleged the "specific facts that are necessary to support [their] claim." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). The Complaint should be dismissed for lack of Article III standing.

### A. The Individual Plaintiffs do not have standing and the Complaint must be dismissed.

#### a. The Individual Plaintiffs do not have standing to challenge the Five-Voter Limits

As the SEC Defendants previously argued, the statutes comprising the so-called "Five Voter Limits," S.C. Code Ann. §§ 7-15-330(B)(4) and 7-15-385(G), have a narrow reach limited to the *requesting* or *returning* of an absentee ballot, not to "voting assistance" more generally. SEC Defs.' Mem. at 18; SEC Defs.' Mem. at 19 (discussing the allegations in paragraphs 9, 24, 26, 30, 74, and 76 of the Complaint).

In their Response, Plaintiffs do not challenge the limited scope of the Five-Voter Limits statutes, but they still try to advance their conclusory allegations that those statutes inhibit much more than a voter's ability to receive assistance in *requesting* or *returning* of an absentee ballot.

---

[6] Organizations like the NAACP "can demonstrate Article III standing "either in [their] own right or as a representative of [their] members." *Maryland Election Integrity, LLC v. Maryland State Bd. of Elections*, 127 F.4th 534, 538 (4th Cir. 2025). As previously pointed out, Plaintiffs' Complaint did not allege the NAACP had organizational standing, which is standing in its own right. *See* SEC Defs.' Mem. at 11-12. In Response, Plaintiffs did not contend that they alleged organization standing, only associational standing.

3

*See* Pls.' Response at 2 ("All Individual Plaintiffs …have alleged that the Five-Voter Limits "will likely deny them the assistor of their choice"); Pls.' Resp. at 7 ("Ms. Gaither will likely not be able to assist [Mr. Caldwell] due to the Five Voter Limits"); Pls.' Resp. at 8 ("The Voting Restrictions . . . will likely prohibit Ms. Allen from assisting Ms. Jenkins and Mr. Bell with *voting* in the upcoming election.") (emphasis added); Pls.' Response at 17 ("Five-Voter Limit . . . will likely deny [the Individual Plaintiffs] the assistor of their choice."). In considering a Rule 12(b)(1) motion, the Court need not "take account of allegations in the complaint labeled as fact but that constitute nothing more than 'legal conclusions' or 'naked assertions.'" *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). The above-referenced allegations discussed in the Response are "legal conclusions" or "naked assertions," and, as such, they should be disregarded.

Additionally, Plaintiffs' Response misapprehends the SEC Defendants to be arguing that (1) "requesting and returning" an absentee ballot is not subsumed within "voter assistance";[7] and (2) the Complaint fails to allege that the Individual Plaintiffs need help requesting or returning ballots. Neither assertion is correct. Unquestionably, voters can receive assistance with "requesting and returning" absentee ballots and these are two of many activities that are a part of the overall voting process. However, the salient point is that the Complaint conflates a numerical limit on assistors who *request* and *return* absentee ballots with the much different allegation of a broader impairment of voting assistance in general.

---

[7] Plaintiffs assert that the SEC Defendants "fail[ed] to draw the reasonable inference that requesting and returning ballots ***are*** subsumed within assistance." Pls.' Resp. at 18 (emphasis added). On information and belief, they intended to say the SEC Defendants argue these activities "are ***not*** subsumed within assistance."

Plaintiffs also assert in their Response that "[b]efore enactment of [the Five-Voter Limits statute], Ms. Gaither [Mr. Caldwell's preferred assistor] assisted approximately [10] to [25] residents during each election with requesting and returning absentee ballots," Pls.' Response at 7 (citing Compl. ¶¶ 70–71), but now she "may assist only [5] residents per election." *Id.* (citing Compl. ¶¶ 67–69, 72). Similarly, Plaintiffs assert that "Ms. Allen [Ms. Jenkins' and Mr. Bell's preferred assistor] coordinates voting assistance for approximately 25 residents at Union Post Acute," Pls.' Response at 8 (citing Compl. ¶ 74), "[b]ut due to the Five Voter Limits, [she] cannot assist most of the residents who request her help." *Id.* (citing Compl. ¶¶ 74–76). The Response contends that these allegations adequately plead an injury in fact by showing the "Individual Plaintiffs each identified their preferred assistor, provided facts showing that before the Five-Voter Limit became law each preferred assistor assisted up to 25 voters per election, and explained that the number of residents who want these individuals to assist them remains much higher than [5]." Pls.' Resp. at 18 (citing Compl. ¶¶ 70–77). While these allegations do provide a bit more detail, they do not withstand scrutiny, and for several reasons do not meet the threshold (even at the pleadings stage) to show standing.[8]

For one thing, the Response's citation to the Complaint's allegations about Ms. Gaither is not precisely accurate. Paragraphs 70 and 71 of the Complaint do not allege that "Ms. Gaither assisted approximately [10] to [25] residents [at MUSC Chester] during each election *with requesting and returning absentee ballots*." Pls.' Resp. at 7 (emphasis added). Rather, paragraph 70 alleges that

---

[8] The Response also points to the allegations that "Mr. Bell will likely not be prioritized as one of the five voters for Ms. Allen to help in the 2026 elections because he has family members who have previously helped him to vote." *Id.* (citing Compl. ¶ 76). As explained in the Memorandum, these allegations, while superficially more particular, are conclusory, factually unsupported, and even if true would raise causation issues. *See* SEC Defs.' Mem. at 21, fn 12.

> all *voting assistance* used to be arranged and provided by … [Ms.] Gaither. Both when new residents arrive at the facility and prior to upcoming elections, *Ms. Gaither* confirms with residents whether they are registered to vote and *asks them if they need assistance with the voting process*. If residents need assistance, Ms. Gaither asks from whom they would like to receive assistance.

Compl. ¶ 70 (emphasis added). And paragraph 71 alleges that

> Because of Ms. Gaither's rapport with facility residents, her proximity to them, and her familiarity with the voting process, *many [MUSC Chester] residents ask that [Ms. Gaither] assist them with voting*. Prior to the effective date of [the Five-Voter Limits statutes], Ms. Gaither assisted approximately 10 to 25 voters per election.

Compl. ¶ 71 (emphasis added). Neither of these paragraphs mentions "requesting and returning absentee ballots," which are the only voting-related activities covered by the Five-Voter Limits statutes. Moreover, taking paragraph 70 at face value, Ms. Gaither is not necessarily the person assisting the resident, because she is "ask[ing] from whom [the residents] would like to receive assistance." Compl. ¶ 70. Similarly, while the Response's summary of paragraph 74 appears to accurately describe the allegations in the Complaint, this paragraph does nothing more than alleges that Ms. Allen "coordinates *voting assistance* for the facility's approximately 25 residents who vote" and "has been *helping Union Post Acute residents vote* for more than two decades." Compl. ¶ 74 (emphasis added).

But even assuming the allegations are true and reading them together, Plaintiffs have alleged that Ms. Gaither helped approximately 10 to 25 voters with voting assistance in previous elections, while Ms. Allen is currently helping approximately 25 voters with voter assistance. To believe that the Individual Plaintiffs are harmed by the Five-Voter Limits statutes requires assuming speculation on top of speculation, *inter alia*, that a sufficient number of the 10 to 25 voters listed above desire to vote absentee, require help specifically with requesting and returning an absentee ballot, and will be prioritized for assistance over these Individual Plaintiffs.

Additionally, if the number of voters needing assistance from Ms. Gaither is closer to 10 than 25, the odds that these statutes will present an obstacle to Plaintiffs will continue to decrease.

At bottom, therefore, the allegations about the Five-Voter Limits rest entirely on speculation and conjecture about how those specific statutes will personally affect the Individual Plaintiffs. "The Supreme Court has repeatedly held that an alleged harm is too 'speculative' to support Article III standing when the harm lies at the end of a 'highly attenuated chain of possibilities.'" *South Carolina v. United States*, 912 F.3d 720, 727 (4th Cir. 2019) (*quoting Clapper*, 568 U.S. at 410); *see also Beck*, 848 F.3d at 275. Such is the case with the allegations about the Five-Voter Limits statutes. Thus, as plead by the Plaintiffs, it cannot be said that the Individual Plaintiffs face a "realistic danger" of future injury from the Five-Voter Limits, *see N. Virginia Hemp*, 125 F.4th at 489, or a future injury that is "certainly impending." *see Clapper*, 568 U.S. at 409.

### b. The Individual Plaintiffs do not have standing to challenge the "Limits on Voting Assistance Eligibility"

S.C. Code Ann. § 7-13-780 provides that "[o]nly those persons who are unable to read or write or who are physically unable or incapacitated from preparing a ballot or voting shall be entitled to receive assistance of any kind in voting." According to the Complaint, Mr. Caldwell and Mr. Bell "have physical disabilities that they do not believe render them completely physically incapacitated from voting." Compl. ¶ 55; *see also* Pls.' Resp. at 3, 12. As the SEC Defendants made clear in their Memorandum, the SEC does not interpret section 7-13-780 to deny *anyone* with physical disability an assistor of their choice (including Mr. Caldwell and Mr. Bell, assuming the truth of their allegations that they are physically disabled) and guidance to this effect is in the currently operative SEC Poll Managers' Handbook (Handbook), effective September 2024. *See* SEC Defs.' Mem. at 14-16. However, Plaintiffs nonetheless challenge section 7-13-780 based on

the above-described hypothetical interpretation of the statute to exclude Mr. Caldwell and Mr. Bell from voter assistance.

Plaintiffs contend they have adequately pled a "credible threat of enforcement" against these individuals. *See Abbott v. Pastides*, 900 F.3d 160, 168 (4th Cir. 2018) (A "credible threat of enforcement to support standing "must be a non-speculative claim of 'future injury,' usually in the form of a 'credible threat' that the challenged law will be enforced against the putative plaintiffs."). They have not.

First, Plaintiffs claim they have stated a "credible threat of enforcement" because the statement in the Handbook is only the SEC's "litigation position." Pls.' Resp. at 15. This is plainly inaccurate. This lawsuit was filed in December 2025, more than a year after the currently operative version of the Handbook was published in September 2024. *See* SEC Defs.' Mem. at 14, fn. 7.

Second, the Plaintiffs contend that there is a "credible threat of enforcement" because the Attorney General is the chief law enforcement officer in the State and he has not explicitly disavowed enforcement of S.C. Code Ann. § 7-13-780. Pls.' Resp. at 14. On this point, the salient fact is that the SEC has never interpreted section 7-13-780 to mean what Plaintiffs claim it does and, thus, there is nothing to enforce that would disadvantage Plaintiffs. *Buscemi v. Bell*, 964 F.3d 252 (4th Cir. 2020), is controlling precedent on this point. In *Buscemi*, the Fourth Circuit considered litigation brought by two unaffiliated presidential candidates and a voter against the executive director of the North Carolina Board of Elections, alleging constitutional harms because North Carolina's "qualified voter requirement . . . exclude[d] nonresident, unaffiliated presidential candidates." *Id.* at 259. As held by the Court, "a credible threat of enforcement is critical to establishing an injury in fact. *And prior enforcement of the challenged statute is the most obvious way to demonstrate a credible threat of enforcement in the future*." *Id.* (emphasis added) (cleaned

8

up). Ultimately, because the North Carolina Election Board had never enforced the statute, and it assured it would not do so, the Court held there was no "credible threat" to confer standing:

> Kopitke has not alleged that the Board ever has interpreted the qualified voter requirement to exclude nonresident, unaffiliated presidential candidates. To the contrary, Ross Perot, an unaffiliated candidate for President in 1992, appeared on North Carolina's general election ballot, although he was not a North Carolina resident. Given this history, as well as the Board's present assurances that it will not enforce such a requirement against Kopitke, Kopitke has failed to allege 'a credible threat of enforcement' to demonstrate standing to challenge the qualified voter requirement.

*Id.* at 260 (cleaned up).

*Buscemi* is on all fours with the situation here. If anything, the case against a "credible threat of enforcement" in this case is even stronger than in *Buscemi*. In *Buscemi,* there was a statute that would have directly impacted the candidate-plaintiffs but for the fact that it was not enforced. Here, the SEC Defendants actively dispute the Plaintiffs' hypothetical construction of section 7-13-780, and Plaintiffs have not alleged that the SEC Defendants or anyone else has ever interpreted the statute in the manner theorized by Plaintiffs, much less threatened to enforce it.

**Third**, Plaintiffs' hypothetical construction of S.C. Code Ann. § 7-13-780 is even less credible in view of the fact that "our General Assembly has specified that statutes concerning absentee registration and absentee voting shall be liberally construed." *Knight v. State Bd. of Canvassers*, 297 S.C. 55, 57, 374 S.E.2d 685, 686 (1988). Specifically, section 7-15-20 provides that Article 3 (Absentee Registration) and Article 5 (Absentee Voting) of Title 7, S.C. Code Ann., "shall be liberally construed in order to effectuate their purposes." This legislatively mandated liberal construction makes it even less likely that section 7-13-780 is a serious threat to any of the Individual Plaintiffs' ability to qualify for voter assistance.

      **c. The Individual Plaintiffs do not have standing to challenge the "Limits on Possible Assistors"**

Like the situation with section 7-13-780 described above, Plaintiffs are attempting to create a problem that does not exist parsing the definition of the word "confined" in the provision that an "authorized representative" other than an immediate family member only is available to voters who are, *inter alia*, "confined to a hospital, nursing home, residence, or somewhere similar . . . ." Resp. at 16-17. Based on *Buscemi*, and for the other reasons discussed *supra*, Plaintiffs have not alleged a credible threat of enforcement against the Individual Plaintiffs for them to have an injury in fact under this statute.

Otherwise, as noted in the Memorandum, the Complaint "complains generally about the definition of 'authorized representative' in section 7-15-310(7), even though the alleged problems with this definition do not apply to the Individual Plaintiffs." *See* SEC Defs.' Mem. at 17. The SEC Defendants refer to their prior arguments.

**II.    Because Mr. Caldwell does not have standing, the NAACP necessarily does not have associational standing.**

As explained in the Memorandum, to demonstrate associational standing, the NAACP must show, *inter alia*, that "its members would otherwise have standing to sue in their own right." *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) (citing *Hunt v. Washington State Apple Adver. Commission*, 432 U.S. 333, 343 (1977)).[9] *See* SEC Defs.' Mem. at 12. Thus, because Mr. Caldwell is the only NAACP member who has been identified in the Complaint and he does not have standing, it necessarily follows that the NAACP does not have associational standing.

In its Response, the NAACP asserts that the allegations in the Complaint "that it has other members with similar injuries . . . is independently sufficient to establish standing at the pleading

---

[9] As discussed *supra*, Plaintiffs are not arguing that they have organizational standing.

stage." Pls.' Resp. at 21. For several reasons, under the precedent articulated by the Supreme Court in *Summers v. Earth Island Institute,* 555 U.S. 488 (2009) and other authority, the SEC Defendants respectfully contend this position is incorrect.

In *Southern Walk at Broadlands Homeowner's Association, Inc. v. OpenBand at Broadlands, LLC*, the Fourth Circuit applied *Summers* to uphold the lower court's dismissal for lack of associational standing at the pleadings stage, holding that "[t]he Supreme Court has clarified that to show that its members would have standing, an organization must 'make specific allegations establishing that at least one *identified member* had suffered or would suffer harm.'" 713 F.3d 175, 184 (4th Cir. 2013) (citing *Summers*, 555 U.S. 488, 498 (2009) (emphasis added). The Court went on to hold that "Southern Walk has failed to identify a single *specific member* injured by the exclusivity arrangement" and "this failure to follow the requirement articulated in *Summers* would seem to doom its representational standing claim." *Id.* (cleaned up).[10] The Court further held that "although we recognize that applying *Summers* to all representational standing claims places a burden on organizational plaintiffs, such a burden accords with our obligation under Article III to ensure that the plaintiff is the proper party to bring the suit." *Id.* (cleaned up).

Under similar principles, Plaintiffs cannot seek relief on behalf of unnamed NAACP members at all. "The general rule is that a plaintiff 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *S.C. State Conf. of the NAACP v. S.C. Dep't of Juv. Just.*, No. 25-1032, 2026 WL 233528, at *8 (4th Cir. Jan. 29, 2026) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). "Article III does not give federal courts

---

[10] "Representational standing" is a term often used interchangeably with "associational standing." See 6 Am. Jur. 2d Associations and Clubs § 34 (describing "representational or associational standing [as] derivative of the standing of the association's members").

the power to order relief to any uninjured plaintiff . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C. J., concurring)); *see also Gill v. Whitford*, 585 U.S. 48, 72 (2018) ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it"); *see also* SEC Defs.' Mem. at 17.

## Conclusion

For the foregoing reasons, as well as the reasons previously argued in its Memorandum, the Complaint fails to adequately allege that the Plaintiffs have Article III standing and the Response does not present any meaningful argument to support its position. The Court should dismiss this action.

Respectfully submitted,

*s/ Michael R. Burchstead*
Mary Elizabeth Crum (Fed. ID No. 372)
Tracey C. Green (Fed. ID No. 6644)
Michael R. Burchstead (Fed. ID No. 102967)
BURR & FORMAN LLP
Post Office Box 11390
Columbia, SC 29211
(803) 799-9800
lcrum@burr.com
tgreen@burr.com
mburchstead@burr.com

Thomas W. Nicholson (Fed. ID No. 12086)
STATE ELECTION COMMISSION
1122 Lady Street, Suite 500
Columbia, SC 29201
(803) 734-9063
tnicholson@elections.sc.gov

*Counsel for Defendants Jenny Wooten, Dennis Shedd JoAnne Day, Clifford J. Edler, Linda McCall, and Scott Moseley*

February 10, 2026
Columbia, South Carolina

65476239 v1