## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

### Case No. 3:25-cv-13754-MGL

|  |  |  |
|---|---|---|
| NAACP SOUTH CAROLINA STATE CONFERENCE, ROBERT CALDWELL; JONATHAN BELL; SHERRY JENKINS, *Plaintiffs*, v. ALAN WILSON, in his official capacity as South Carolina Attorney General; CONWAY BELANGIA, in his official capacity as Executive Director of the State Election Commission; ROBERT BOLCHOZ, in his official capacity as Chairman of the State Election Commission; JOANNE DAY, CLIFFORD ELDER, ANGELA STRINGER, and SCOTT MOSELEY, in their official capacities as members of the State Election Commission, *Defendants*. |  | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

TABLE OF CONTENTS

ARGUMENT.................................................................................................................1

I.  The Voting Restrictions are preempted by Section 208. ........................................ 1

    A.  Section 208 protects absentee voters with non-incapacitating disabilities. ...... 1

    B.  The Voting Restrictions prevent Plaintiffs from receiving voting
        assistance from the person of their choice. ...................................................... 3

II.  Plaintiffs have standing. ......................................................................................... 6

    A.  The Individual Plaintiffs have standing. ........................................................... 7

    B.  South Carolina NAACP has standing. ............................................................... 8

III.  Equitable relief is warranted. ................................................................................. 9

    A.  The Voting Restrictions cause Plaintiffs irreparable harm. ............................... 9

    B.  The equities and public interest also favor Plaintiffs. ..................................... 10

IV.  Plaintiffs' summary-judgment evidence is admissible...........................................11

V.  The Voting Restrictions cannot be enforced as a matter of law. .......................... 13

VI.  This Court should not wait to enjoin the illegal Voting Restrictions. ................... 15

CONCLUSION ........................................................................................................... 15

**ARGUMENT**

## I.    The Voting Restrictions are preempted by Section 208.

Plaintiffs have already demonstrated that the Voting Restrictions violate the plain text of Section 208. *See* Pls.' Mot. for Summ. J. ("Pls.' Mot.") 13–21, Dkt. No. 39; Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. ("Pls.' Opp.") 19–29, Dkt. No. 47.[1] Defendants do not meaningfully engage with most of these arguments; indeed, the Attorney General's merits arguments are largely copied and pasted from his opening brief. *Compare* Att'y Gen. Wilson's Mot. for Summ. J. ("AG Mot.") 23–25, 27–32, Dkt. No. 37 *with* Att'y Gen. Wilson's Resp. to Pls.' Mot. for Summ. J. ("AG Opp.") 18–19, 24–29, Dkt. No. 45. To the extent Defendants raise new arguments in response, none save the Voting Restrictions, which are preempted by Section 208.

### A.  Section 208 protects absentee voters with non-incapacitating disabilities.

In an attempt to save the more restrictive Limits on Voting Assistance Eligibility, the Attorney General argues that the term "disability" in Section 208 does not extend beyond physical disabilities. AG Opp. 20–21. This interpretation conflicts with the statute's plain text, common usage, dictionary definitions of the word "disability," its definitions in other federal statutes, and common sense. *See* Pls.' Mot. 15–16. Section 208 says "disability," not "physical disability." The federal code is full of statutes that use the term "physical disability" or "physical disabilities," when applicable. *See, e.g.*, 42 U.S.C. § 280g-9; 42 U.S.C. § 3030d(a)(4); 42 U.S.C. § 1396u-2(a)(5)(E)(V)(cc). Courts cannot write in extra words to a statute particularly where, as here, it is clear that "Congress . . . knows how to do so." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 476 (2003).

The Attorney General admits that many rights-granting federal statutes define "disability" as Plaintiffs do, yet he complains that these statutes "are contained in different sections of the federal code." AG Opp. 20. But Plaintiffs cite these provisions because the VRA itself does not define the term; when a statutory term "is not defined," courts "consider the construction of similar terms in other statutes." *United States v. Johnson*, 47 F.4th 535, 543 (7th Cir. 2022); *see*

---

[1] Page-number references for docketed documents refer to numbers at the bottom of each page.

1

*also Carcieri v. Salazar*, 555 U.S. 379, 388 (2009) (looking at a statutory term's "use in other statutes"). Additionally, the Attorney General does not provide *any* definitions that rebut the dictionary definition Plaintiffs provided showing that the common meaning of "disability" extends beyond physical disabilities. *See* Pls.' Mot. 15–16.

The Attorney General's sole citations for his interpretation, meanwhile, come from a law review article and a stray fragment of legislative history, neither of which directly address the issue. AG Opp. 20–21. The Attorney General then conflates non-physical disabilities with full mental incapacity, suggesting that because states can restrict the voting rights of people in the latter category, Section 208 cannot apply to the former. *See id.* This erroneous (and offensive) suggestion reveals fundamental ignorance about the rights of individuals with non-physical disabilities, not all of whom have mental incapacities that disqualify them from voting.

Finally, the Attorney General argues that "[i]f 'disability' [in Section 208] was intended to be all-encompassing, there would be no need to enumerate additional specific disabilities" around it. AG. Opp. 21. But this also misunderstands Section 208. The statute's reference to "inability to read or write," 52 U.S.C. § 10508, is principally a protection for low literacy voters, rather than visually impaired voters who are already covered under Section 208's protections for blindness and voters with disabilities. The legislative history illustrates that Section 208's protection of voters unable "to read or write" was motivated by this country's dark history of "literacy tests in states which have used such tests as a discriminatory device to prevent [Black citizens] from registering to vote," rather than physical disability. S. Rep. 97-417, at 63 (1982); *see also United States v. Berks Cnty.*, 277 F. Supp. 2d 570, 580 (E.D. Pa. 2003) ("Congress viewed Section 208, as it applied to illiterate voters, as a corollary to the nationwide ban on literacy tests."). Courts have long applied Section 208 to protect low literacy voters separate and apart from voters with physical disabilities. *See, e.g.*, *Ala. State Conf. of the NAACP v. Marshall*, No. 2:24-CV-00420-RDP, 2024 WL 4282082, at *3–4 (N.D. Ala. Sept. 24, 2024) (describing significant harm to low literacy individuals from absentee ballot assistance restrictions), *stay denied sub nom.*, *Ala. State Conf. of the NAACP v. Att'y Gen., Ala.*, No. 24-13111, 2024 WL

4481489 (11th Cir. Oct. 11, 2024), *questions certified*, 161 F.4th 1286 (11th Cir. 2025); *Nick v. Bethel*, No. 3:07-CV-0098 TMB, 2008 WL 11456134, at *1 (D. Alaska July 30, 2008) (granting equitable relief for Yup'ik-speaking Alaska Native voters). Regardless, the Attorney General's surplusage argument, AG Opp. 21, makes no sense on its own terms—if "disability" referred only to "physical disability," as the Attorney General urges, it would be similarly superfluous to mention specific physical disabilities that would be subsumed within the category of "disability."

The Attorney General provides no relevant authority to rebut Plaintiffs' argument—supported by Section 208's text and statutory definitions throughout the U.S. Code—that Section 208, a statute with purposefully "broad language," applies beyond physical and incapacitating disabilities. *League of Women Voters of Ohio v. LaRose* ("*LWV Ohio*"), 741 F. Supp. 3d 694, 711 (N.D. Ohio 2024). Section 208 preempts the Limits on Voting Assistance Eligibility because those limits restrict the right to assistance for voters protected by Section 208.

### B. The Voting Restrictions prevent Plaintiffs from receiving voting assistance from the person of their choice.

The plain text and overwhelming weight of authority demonstrate that Section 208 guarantees covered voters the choice of any person not specifically excluded by Congress to help them vote, *see* Pls.' Mot. 16–21; Pls.' Opp. 23–27. The Attorney General repeatedly asks this Court to adopt a "more modest view of Section 208," AG Opp. 23, and a "more limited view of its scope," *id.* at 22. Specifically, the Attorney General suggests that this Court should not treat the two enumerated exceptions in Section 208—"the voter's employer or agent of that employer or officer or agent of the voter's union," 52 U.S.C. § 10508—as "constitut[ing] an exhaustive list of the only individuals who may be excluded from providing assistance," AG Opp. 22–23 (citing *La Union Del Pueblo Entero v. Abbott*, 151 F. 4th 273, 294 (5th Cir. 2025)).

The Attorney General's principal support for this contention is the Fifth Circuit's *Abbott* decision, which, as Plaintiffs have explained, is a major outlier in the Section 208 line of cases and disclaims text-first interpretation. Pls.' Opp. 24–25. But "where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be

3

implied, in the absence of evidence of a contrary legislative intent," *Hillman v. Maretta*, 569 U.S. 483, 496 (2013) (citation modified). Indeed, the vast majority of courts that have addressed the issue have found that Section 208's enumerated exceptions are exhaustive. *See* Pls.' Mot. 18–19 (collecting cases). The Attorney General's atextual interpretation cannot account for the "broad language chosen by Congress," *LWV Ohio*, 741 F. Supp. 3d at 711, and intent to "give voters with disabilities unrestricted choice in their right to assistance," *Disability Rts. N.C. v. N.C. State Bd. of Elections*, No. 5:21-CV-361-BO, 2022 WL 2678884, at *5 (E.D.N.C. July 11, 2022).

Even in *Abbott*, the divided panel majority found that the expressio unius canon did not apply in that case because "[t]he Section 208 exclusions and those in [the challenged law] are conceptually different. While Section 208 categorically bars two classes based on their relationship to the voter (employers and unions), the [challenged law] bar[s] people based on whether they are compensated or paid ballot harvesters." 151 F.4th at 294. The *Abbott* court's reasoning is entirely inapt here: The Limits on Possible Assistors *do* set classifications for potential assistors based on their relationship to the voter. *See* Pls.' Mot. 5–6. Even when taken at face value, the *Abbott* majority's analysis has no bearing in this case.

Defendants rehash several other arguments for why the Voting Restrictions do not conflict with Section 208. None are availing. The Attorney General surmises that "Section 208 doesn't extend to requesting and returning absentee ballots." AG Opp. 26–27. He references the Senate Report's mention of the "right to pull a lever in a voting booth," *see* S. Rep. 97-417, at 19, to imply that Section 208 does not apply to absentee voting, *see* AG Opp. 24. But this does not logically follow. In any event, the Attorney General omits the Senate Report's mention of "*the right to mark a piece of paper and drop it in a box or* the right to pull a lever in a voting booth," S. Rep. 97-417, at 19 (emphasis added)—a reference to absentee and mail-in voting. This accords with the VRA's definition of "vote" to include "all action necessary to make a vote effective . . . including, but not limited to . . . having such ballot counted properly," 52 U.S.C. § 10310(c)(1), which courts have held clearly applies to mail-in and absentee voting, *see* Pls.' Mot. 13–14 (collecting cases); Pls.' Opp. 21–22 (collecting cases). Even the Commission

4

Defendants acknowledge, as they must under the VRA's plain terms, that Section 208 "applies to all parts of the voting process." Comm'n Defs.' Mem. in Supp. of Mot. for Summ. J. ("SEC Mot.") 29, Dkt. No. 38-1.

The Attorney General's two cited cases do not support a different result. In *New Georgia Project v. Raffensperger*, the court did not make a determination either way, holding only that "further briefing and discovery are necessary," 484 F. Supp. 3d 1265, 1302 (N.D. Ga. 2020). The only other support he offers is an outlier state court decision, *DSCC v. Simon*, 950 N.W.2d 280 (Minn. 2020), which is easily refuted by myriad federal court decisions. *See* Pls.' Opp. 21–22; Pls.' Opp'n to Defs.' Mots. to Dismiss ("Pls.' MTD Opp.") 26. The text of the VRA and breadth of caselaw fully addressing the question foreclose this argument.

The Commission insists that Section 208 does not preempt the Voting Restrictions because "there are no restrictions on someone helping Plaintiffs or any absentee voter with disabilities from personally requesting a ballot by phone or returning the ballot by placing it in the mail." Comm'n Defs.' Resp. to Pls.' Mot. for Summ. J. ("SEC Opp.") 20, Dkt. No. 46. Neither contention is correct. The Commission's claim that "there are no limitations on who may help an absentee voter with physical disabilities in requesting an absentee ballot by phone," *id.* at 19, is plainly wrong; the Limits on Possible Assistors make clear that only the voter "or a member of his immediate family, as defined in Section 7-15-310(8)," may "request an application to vote by absentee ballot . . . by telephone," S.C. Code § 7-15-330(A)(1). This is the exact same limitation that exists for requesting an absentee ballot in person or by mail. *Id.* The Commission also erroneously argues that "the statutes do not prohibit an absentee voter from receiving help from anyone of their choice in returning the ballot by mail." SEC Opp. 18 (citing S.C. Code § 7-15-385(A)). But that provision does not permit *anyone* to assist voters with returning the ballot by mail. Section 7-15-385(A)(3) is the only subsection that permits anyone— in this instance, "a member of the applicant's immediate family . . . or an authorized representative"—to assist with returning a ballot, and that assistor must do so "to an election official during office hours." By contrast, Section 7-15-385(A)(1)—the provision that permits an

5

applicant to return a ballot via "mail to the main office of the county board of voter registration and elections"—does not authorize *anyone* to assist with that process. It is unreasonable for the Commission to read subsection (A)(1) as silently permitting unrestricted ballot assistance when it does not include the "authorizing" language that expressly grants the limited right to assistance in subsection (A)(3). The Commission's own guidance confirms as much, making clear "Immediate Family Member[s] and Authorized Representatives" "[m]ust return the ballot return envelope in person . . . mailing is NOT allowed."[2]

Finally, Plaintiffs noted that Defendants' appeal to their purported interests in the Voting Restrictions improperly framed Plaintiffs' statutory preemption claim as a constitutional right-to-vote claim, in which court-imposed balancing is appropriate. *See* Pls.' Opp. 30 (citing *Burdick v. Takushi*, 504 U.S. 428 (1992)). The Commission persists in that error, relying on constitutional right-to-vote cases to argue that "the State's significant interest in combatting fraud" outweighs any "minimal restrictions" on "Plaintiffs' voting rights." SEC Opp. 21. In so doing, the Commission all but admits that it has twice applied the wrong standard in this case.

## II.    Plaintiffs have standing.

Defendants have not rebutted Plaintiffs' proof of standing in their opening and opposition briefs. *See* Pls.' Mot. 27–31; Pls.' Opp. 1–19.[3] But a few errors in Defendants' opposition briefs merit correction.[4] For one, after the Attorney General maintained that Plaintiffs must show "(1) they are entitled to assistance under Section 208"; and "(2) South Carolina law otherwise denies them that assistance," AG Mot. 8, he now adds the requirement that Plaintiffs must show "(2) South Carolina law 'unduly burden[s]'" their rights under Section 208. AG Opp. 3 (quoting S.

---

[2] S.C. Election Comm'n, *Absentee Voting: How to return an absentee ballot for another voter*, https://scvotes.gov/voters/absentee-voting/ [https://perma.cc/B5EA-KF9P] (last accessed May 9, 2026).

[3] Plaintiffs' Opposition Brief explains why Defendants' ripeness arguments fail, *see* Pls.' Opp. 18–19, and Defendants offer nothing new on this front in their opposition briefs.

[4] As a general matter, it is not true that Plaintiffs rely only on a "blanket reference to 'the summary-judgment record.'" AG Opp. 3. *See* Pls.' Mot. 6–11 (describing specific harms to Plaintiffs with record cites); *id.* 27–31 (applying law to Plaintiffs' facts).

Rep. 97-417, at 63). This new theory is unfaithful to the text of Section 208 and contrary to how most courts have interpreted it. *See* Pls.' Opp. 25–27. Regardless, Plaintiffs have standing under either standard.

### A. The Individual Plaintiffs have standing.

Defendants argue that Plaintiffs' Five-Voter Limit claims "rest on the assumption that only one staff member is available to provide voting assistance to all nursing facility residents and that more than five individuals at their respective facilities will request assistance from that one assistor." AG Opp. 7; *see* SEC Opp. 13. But Section 208 guarantees Plaintiffs an assistor "of [their] choice," 52 U.S.C. § 10508—not someone "the State has chosen." *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 236 (M.D.N.C. 2020). Individual Plaintiffs each rely on one specific staff member with many years of experience helping residents vote, whom they trust and interact with frequently. *See* Pls.' Mot. 6–10. It is immaterial whether there are other people available to help, because those individuals are not the assistors of Plaintiffs' choice.

Defendants also suggest Plaintiffs lack standing because they haven't shown "they're unable to request an absentee ballot by phone." AG Opp. 5; *see* SEC Opp. 12. As explained *supra*, this argument misreads Section 7-15-385(A), which imposes the same limits on requesting a ballot by phone as it does by mail. And it is of no moment whether Plaintiffs could request a ballot by phone; the Voting Restrictions still impede their right to assistance. Similarly, the Commission argues—based on the Complaint alone—that Plaintiffs "do not need an assistor pursuant to § 7-15-385(A)(3) for assistance in taking return-addressed stamped envelopes to the post office." SEC Opp. 12–13. This too misreads the law and ignores the facts. While the Complaint discusses both mail and absentee voting—terms used interchangeably in common parlance—the record makes clear Individual Plaintiffs need assistance from specific staff, who are required to return absentee ballots in person and have done so for years. *See* Pls.' Mot. 6–10. The Five-Voter Limits impede that assistance. The Commission does not and cannot argue that Plaintiffs are able to take their ballots to the post office for mailing.

7

More still, Commission Defendants effectively concede standing when they argue that "all that is at stake is Plaintiffs' preference on the method of voting absentee, not the right to vote itself." SEC Opp. 12. As explained *supra*—and conceded by the Commission, *see* SEC Mot. 29—Section 208 applies to absentee voting. Describing the stakes this way does not just misinterpret the VRA, but also shows a failure to understand that for voters with disabilities who have long been "disenfranchised or discriminated against" in voting, absentee voting is an essential mechanism to make their voices heard. *See Disability Rts. N.C. v. N.C. State Bd. of Elections*, 602 F. Supp. 3d 872, 879 (E.D.N.C. 2022).

### B.   *South Carolina NAACP has standing.*

Plaintiffs have demonstrated that South Carolina NAACP has standing to sue on behalf of its members. *See* Pls.' Mot. 29–31; Pls.' Opp. 15–18. Defendants argue that South Carolina NAACP "can't rely on general references to 'other members,'" AG Opp. 11, and "cannot make claims on behalf of unnamed or unidentified members." SEC Opp. 15. But this is not true provided that "*at least one* identified member" has standing. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (emphasis added) (citation modified). Mr. Caldwell, a South Carolina NAACP member named in the Complaint, has standing to challenge the Voting Restrictions; South Carolina NAACP need not name additional members to satisfy the first prong of associational standing. *See id.* Requiring organizations to identify each harmed member would defeat the function of associational standing entirely. *E.g. Outdoor Amusement Bus. Ass'n, Inc. v. DHS*, 983 F.3d 671, 683 (4th Cir. 2020) (where "at least one of its 'identified' members 'would otherwise have standing to sue in their own right'" "[t]he Supreme Court has regularly found associational standing . . . when an injunction would benefit many of their members") (internal citations omitted).

Because South Carolina NAACP has standing, it is permitted to "assert the rights of absent third parties—its members—and litigate on their behalf." *D.C. by Chaplick v. Fairfax Cnty. Sch. Bd.*, 171 F.4th 255, 266 (4th Cir. 2026) (citation modified). Part of litigating on their

behalf includes describing the breadth and gravity of the harm they face. *See* Pls.' Mot. 22–25. South Carolina NAACP's unrebutted declarations detail how the Voting Restrictions harm specific members. *See* Murphy Decl. ¶¶ 11–13 Dkt. No. 39-8; Flemming Decl. ¶¶ 5–8, Dkt. No. 39-9. And the Supreme Court has held that compelling disclosure of NAACP membership lists is unconstitutional. *See NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958).

Finally, the Attorney General dismisses South Carolina NAACP's claim that its "members with disabilities who would like to rely on youth members who are under 18 to return their absentee ballot . . . cannot" under the Limits on Possible Assistors, Flemming Decl. ¶ 8; *see* Pls.' Mot. 24, arguing that harm is irrelevant because "no assistors are raising claims in this suit," AG Opp. 11. The Attorney General misunderstands this declaration, which shows how disabled NAACP members are barred from relying on their preferred assistors who are under 18.

### III.   Equitable relief is warranted.

#### A.  *The Voting Restrictions cause Plaintiffs irreparable harm.*

The Attorney General claims that Plaintiffs have not proven irreparable harm because doing so requires a "fact-intensive inquiry" to determine whether "everyone who hopes" to be relieved from the Voting Restrictions "show they [a]re entitled to assistance" and are denied the same by State law. AG Opp. 14–15; *see also* SEC Opp. 22–23. Defendants conflate the merits of the preemption claim with the irreparable harm analysis, suggesting that Plaintiffs must satisfy an "undu[e] burden" standard for irreparable harm. AG Opp. 14–15 (quoting S. Rep. 97-417, at 63); *see also* Pls.' Opp. 25–26 (discussing how this is also the incorrect merits standard).

The pertinent preemption analysis, however, is a pure legal question: whether the federal law (Section 208) preempts state law (here, the Voting Restrictions). *See* Pls.' Mot. 13; Pls.' Opp. 26. The separate irreparable harm inquiry, by contrast, concerns whether the application of preempted laws injure Plaintiffs such that equitable relief is warranted. This latter inquiry requires applying facts to law. Here, Plaintiffs face impending irreparable harm through the deprivation of their federally guaranteed right to assistance and consequent violation of their fundamental right to vote caused by the Voting Restrictions. *See* Pls.' Mot. 21–25.

9

### B. *The equities and public interest also favor Plaintiffs.*

The equities and public interest favor enjoining the Voting Restrictions. Defendants cannot—and have not—asserted any interest that could outweigh Plaintiffs' and the public's interest in enjoining the preempted Voting Restrictions. *See* Pls.' Mot. 25–27.

The Attorney General asks this Court to "[b]alance the benefits and burdens of regulation," as though infringing on Plaintiffs' federal right to assistance is mitigated by the State's purported interest in combatting virtually nonexistent voter fraud.[5] But as courts have held, "[t]he public interest is served," definitionally, by enjoining restrictions on the "federally guaranteed voting right[]" to assistance. *Disability Rts. N.C.,* 2022 WL 2678884, at *7; *see* Pls.' Mot. 25–27 (citing cases). As explained above and in previous briefing, *see* Pls.' Opp. 30, balancing tests employed in other areas of law have no role even in the preemption merits analysis, let alone in the equities.[6]

Other than "voter fraud"—for which there is vanishingly little evidence—Defendants cite no public or governmental interests against an injunction. *See* AG Opp. 15–17; SEC Opp. 23–24. Instead, they collapse the equities with the merits, arguing Plaintiffs and the public face no harm because the Voting Restrictions are lawful. *See* AG Opp. 15; SEC Opp. 24. True enough: "[T]he equities and public interest [often] rise and fall with the case's merits" because "a State is not seriously harmed by a[n] . . . injunction that prevents the State from enforcing laws that are . . . unconstitutional." *Pharm. Rsch. & Mfrs. of Am. v. McCuskey*, 171 F.4th 675, 696 (4th Cir.

---

[5] The Attorney General's continued reference to one person purportedly returning 12 absentee ballots in violation of the Five-Voter Limits only supports Plaintiffs' ripeness and standing arguments. *See* Pls.' Opp. 10–11, 30. Even if his argument carried any water, "when considering all of the other means of combatting voter fraud integrated into the absentee-voting system," Defendants' scattershot references to the scant few instances of voter fraud in the United States are misplaced as to both the merits and equities. *See League of Women Voters of Va. v. Va. State Bd. of Elections*, 458 F. Supp. 3d 442, 459 (W.D. Va. 2020).

[6] In its response brief, the Commission relies on *Grant v. Knapp*, No. 2:23-CV-6838-BHH, 2025 WL 1145042, at *7 (D.S.C. Mar. 27, 2025), and includes this parenthetical: "(noting the Supreme Court has held that states have 'an undeniably legitimate interest in preventing voter fraud and other abuses that are facilitated by absentee voting')." SEC Opp. 23–24 (quoting *Grant*, 2025 WL 1145042, at *7). The court in *Grant* was in fact citing a decision from the Seventh Circuit, *Tully v. Okeson*, 977 F.3d 608, 616–17 (7th Cir. 2020), *cert. denied* 141 S. Ct. 2798 (2021). To be sure, *Grant* also cites Supreme Court precedent, but not in the quoted portion of the decision.

10

2026) (citation omitted). Because Section 208 preempts the Voting Restrictions, the equities and public interest require an injunction.

## IV.    Plaintiffs' summary-judgment evidence is admissible.

Commission Defendants attack the admissibility of several declarations provided in Plaintiffs' summary-judgment brief. Their largely generalized and conclusory objections fail to show that Plaintiffs' evidence "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). To the contrary, Plaintiffs' declarations are admissible at this stage, based on declarants' personal knowledge, and relevant.

"The court and the parties have great flexibility with regard to the evidence that may be used on a summary judgment proceeding." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015), *as amended* (June 24, 2015) (citation modified). "The court may consider . . . the content or substance of otherwise inadmissible materials where 'the party submitting the evidence shows that it will be possible to put the information into an admissible form.'" *Id.* (citation modified).

The Commission objects to portions of the Caldwell, Allen, Miller, Flemming, and Murphy declarations on hearsay grounds. SEC Opp. 3–7. Of course, *any* declaration is an out-of-court statement, and for that reason, the Federal Rules specifically contemplate submitting "affidavit[s] or declaration[s] used to support or oppose a motion" for summary judgment. Fed. R. Civ. P. 56(c)(4). Properly evaluated at the summary-judgment stage, Plaintiffs' declarations *could be* admissible because their same testimony, if offered at trial, would be admissible. *See Humphreys*, 790 F.3d at 538; *United States v. Elkins Contractors, Inc.*, 225 F. Supp. 3d 351, 357 (D.S.C. 2016). Most of Commission Defendants' hearsay objections fail as a threshold matter because they do not identify any out-of-court statements. For instance, the objected-to portion of Mr. Caldwell's testimony concerns his personal understanding of how Ms. Gaither was prevented from returning more than five ballots. *See* Caldwell Decl. ¶ 17, Dkt. No. 39-1. In other words,

11

Mr. Caldwell doesn't mention any statement by Ms. Gaither at all. *Contra* SEC Opp. 3.[7] The

Commission likewise objects to excerpts of Ms. Allen's declaration as hearsay, but nowhere does

Ms. Allen relay "out-of-court conversations" as the Commission alleges, *see id.* at 4–5—instead,

she describes how in her decades of experience, family members often do not help residents

vote. *See* Allen Decl. ¶¶ 2, 4–5, 9–11, Dkt. No. 39-4. The Commission Defendants' conclusory

objection to Ms. Miller's declaration as hearsay *in toto*—while identifying no specific out-of-

court statements to which they object—should be rejected out of hand. A "general and

unsupported objection is insufficient" under Rule 56(c)(2). *Crouch v. S.C. Dep't of Transp.*, No.

CV 3:18-2045-MGL-SVH, 2020 WL 5984393, at *5 (D.S.C. Mar. 9, 2020), *R. & R. adopted*,

2020 WL 3867282 (D.S.C. July 8, 2020).

The Commission also lodges several misguided objections based on Rule 56(c)(4)'s

personal knowledge requirement. Personal knowledge "does not require . . . absolute certainty,"

*Myrtle Beach Air Force Base Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 681 F.2d 930, 932 (4th

Cir. 1982), and "the proponent's burden is a minimal one," *Austin v. Experian Info. Sols., Inc.*,

148 F.4th 194, 205 (4th Cir. 2025) (citation omitted). Each declarant testified in detail about their

personal knowledge of key unrebutted facts: namely, Plaintiffs' reliance on assistance and the

harms they face from the Voting Restrictions. *See* Caldwell Decl. ¶¶ 3, 8, 14, 17–18 (Mr.

Caldwell has lived at MUSC Chester for nearly ten years and long relied on Ms. Gaither to vote);

Allen Decl. ¶¶ 2–8 (Ms. Allen has worked at Union Post Acute for over four decades and has

personally assisted countless voters); Miller Decl. ¶¶ 4–5, Dkt. No. 39-5; Flemming Decl. ¶¶ 5–8

(Rev. Flemming assisted other NAACP members for years and knows them personally); Murphy

---

[7] The only out-of-court statement within Mr. Caldwell's declaration Defendants identify is what the election official told Ms. Gaither (discussed in paragraph 17 of Mr. Caldwell's declaration). *See* SEC Opp. 3. But this statement is not offered for its truth; rather, it is simply offered to show its effect on both Ms. Gaither (who now will only return five absentee ballots) and Mr. Caldwell (who credibly fears deprivation of Ms. Gaither's assistance). *See* Caldwell Decl. ¶ 17; *United States v. Gallagher*, 90 F.4th 182, 195 (4th Cir. 2024) (statements offered not for their truth are "not hearsay," and a "classic example are statements offered for their effect on the listener").

Decl. ¶¶ 11–13. These objections fail because the Commission took discovery and did "not offer evidence that shows [they] lack[] [personal] knowledge." *Austin*, 148 F.4th at 204–05.

The Commission's relevance objections to the Murphy and Flemming declarations are even further afield. *See* SEC Opp. 6–7. This Court has broad discretion to consider Plaintiffs' declarations and "the threshold for determining whether evidence is relevant is comparatively low." *United States v. Kiza*, 855 F.3d 596, 604 (4th Cir. 2017); *see also* 10B Wright & Miller's Federal Practice & Procedure § 2738 (4th ed. 2026) ("an affidavit should be excluded only when its irrelevance is clear"). The Murphy and Flemming declarations easily clear this low bar.

So too, the Commission's complaints about testimony regarding harm to Greenville NAACP members constitute a misguided standing argument disguised as evidentiary objections. *See* SEC Opp. 6–7. Again, South Carolina NAACP has associational standing based on Mr. Caldwell, "a member with standing." SEC Opp. 6 n.6 (citing *Lane v. Holder*, 703 F.3d 668, 674 n.6 (4th Cir. 2012)). Rule 56 *requires* Plaintiffs to show an absence of dispute of material fact by "citing to particular parts of materials in the record, including . . . declarations." Fed. R. Civ. P. 56(c)(1)(A). The Murphy and Flemming declarations bear out in more specificity Plaintiffs' allegations throughout the Complaint, including related to South Carolina NAACP members besides Mr. Caldwell. *See* Compl. ¶ 20 ("South Carolina NAACP's members include individuals with disabilities who plan to rely on assistance to vote absentee . . . but are denied that assistance by South Carolina law."); *id.* ¶¶ 54, 85, 101. That is exactly what declarations at the summary-judgment stage are for. The Commission's objections to Plaintiffs' summary-judgment evidence should be rejected.

**V.    The Voting Restrictions cannot be enforced as a matter of law.**

The Attorney General urges this Court to issue an unworkably narrow injunction. *See* AG Opp. 29–34. His argument disregards the Supremacy Clause and, if given credence, would prevent Plaintiffs from receiving complete relief. As explained in Plaintiffs' opening brief, the Voting Restrictions are null and void as a matter of law and therefore should be enjoined for two independent reasons: (1) complete relief requires enjoining the provisions beyond the named

Plaintiffs; and (2) laws preempted under the Supremacy Clause cannot be given effect. *See* Pls.' Mot. 31–35.

The Attorney General casts Plaintiffs' requested relief as a "universal injunction," citing cases wholly apart from the federal preemption context. AG Mot. 31–34. But Plaintiffs' requested injunctions are fully in keeping with those granted in federal preemption cases, including similar injunctions granted post-*CASA*. *See* Pls.' Mot. 31–32. And the injunctions are independently required to afford Plaintiffs and their members complete relief. *See id.* at 33.

The Attorney General also argues that "broader relief" than an injunction commanding state officials to refrain from violating federal law would violate the Eleventh Amendment. AG Opp. 29–30. Given *Ex Parte Young* allows Plaintiffs to sue Defendants in their official capacities to prevent them from enforcing preempted laws, it is unclear what "broader relief" the Attorney General contemplates. *See* Pls.' MTD Opp. 32–33. He also suggests that Plaintiffs ask this Court to make the Voting Restrictions "disappear" or be "erased." AG Opp. 29 (citations omitted). While—of course—Plaintiffs do not ask this Court to literally strike the Voting Restrictions from South Carolina Code, "[a] state statute may be declared unconstitutional in toto." *Steffel v. Thompson*, 415 U.S. 452, 469 (1974). Plaintiffs do not even ask this Court to go that far, merely to declare discrete portions of South Carolina Code void and unenforceable. Such a declaration "reflects the opinion of the federal court that the statute cannot be fully enforced." *Steffel*, 415 U.S. at 469–70.

The Attorney General's one-sentence argument that Section 208 should apply only to "national elections" can be rejected out of hand. *See* AG Opp. 34. In support, the Attorney General offers one decision from a New Jersey county court before most Section 208 cases were decided by federal courts.[8] In passing Section 208, Congress sought to remedy the disturbing reality that disabled voters long risked "their right to vote in *state and federal* elections." S. Rep.

---

[8] The decision he cites seems to erroneously hold that only "discriminatory" assistance restrictions are preempted by the VRA. *In re Thirteen Ballots Cast in 1985 Gen. Election in Burlington Cnty.*, 209 N.J. Super. 286, 289, 507 A.2d 314, 316 (Law. Div. 1985).

97-417, at 62 (emphasis added). Federal Section 208 caselaw forecloses the Attorney General's half-hearted argument raised only in his opposition brief. *See, e.g.*, *Nick*, 2008 WL 11456134, at *1 ("Plaintiffs are entitled to injunctive relief [under Section 208] in connection with the upcoming state-run elections"); *DiPietrae v. City of Philadelphia*, 666 A.2d 1132, 1133 (Pa. Commw. Ct. 1995), *aff'd*, 543 Pa. 591, 673 A.2d 905 (1996).

**VI.     This Court should not wait to enjoin the illegal Voting Restrictions.**

Finally, the Attorney General urges this Court to delay administration of justice under law. *See* AG Opp. 34–35. But, as in most Section 208 cases, "the primary concerns underlying the *Purcell* principle—confusion and disruption—don't apply here." *Carey v. Wis. Elections Comm'n*, 624 F. Supp. 3d 1020, 1035 (W.D. Wis. 2022) (citation omitted). Instead, an injunction against the Voting Restrictions will serve to "resolve confusion for disabled voters and those who may facilitate the return of a disabled voter's absentee ballot." *LWV Ohio*, 741 F. Supp. 3d at 723. And unlike some other election law disputes, an injunction here does not "require a sweeping change that will interfere with the administration of other voting laws." *Id.* The Commission concedes it could update most materials for local election officials pertaining to the Voting Restrictions "in a week or less." Comm'n Defs.' Answers to Pls.' First Interrogs. at 5, Dkt. No. 39-10.

Delay would be a particularly unjust outcome given that Defendants themselves have sought extensions in these proceedings. *See* Defs.' Mot. to Amend Scheduling Order, Dkt. No. 28. Finally, petitions for certiorari concerning Section 208 provide no basis for delay. As the Fourth Circuit forcefully explained in *Doe by Doe v. South Carolina*, even "granting *certiorari* does not alter the [law]," No. 25-1787, 2025 WL 2375386, at *9 (4th Cir. Aug. 15, 2025) (granting injunction pending appeal). If every district court delayed deciding any case where a relevant statute is discussed in a pending cert petition, federal courts would grind to a halt. In the meantime, a swift injunction is necessary to remedy Plaintiffs' irreparable harm. *See id.*

**CONCLUSION**

Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment.

15

Dated: May 11, 2026

Respectfully submitted,

*/s/ Allen Chaney*

Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION OF SOUTH
CAROLINA FOUNDATION
P.O. Box 1668
Columbia, SC 29202
(864) 372-6681
achaney@aclusc.org

Stephen D. Hibbard*
PROSKAUER ROSE LLP
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
(310) 284-5622
shibbard@proskauer.com

Robert W. Pommer III*
Alexander B. Guzy-Sprague*
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 600 South
Washington, DC 20004-2533
(202) 416-6808
rpommer@proskauer.com
aguzy-sprague@proskauer.com

Bradley M. Presant*
Amy B. Gordon*
Michael Beckwith*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299
(212) 969-3284
bpresant@proskauer.com
agordon@proskauer.com
mbeckwith@proskauer.com

*Attorneys for Plaintiffs*
*\* Motion for admission Pro Hac Vice forthcoming*
*\*\* Admitted Pro Hac Vice*

Clayton Pierce**
Davin Rosborough**
Jonathan Topaz**
Sophia Lin Lakin**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
cpierce@aclu.org
drosborough@aclu.org
jtopaz@aclu.org
slakin@aclu.org

Brian Dimmick**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW, 6th Floor
Washington, D.C. 20005
(202) 731-2395
bdimmick@aclu.org

16