UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

Case No. 3:25-cv-13754-MGL

| | |
|---|---|
| NAACP SOUTH CAROLINA STATE CONFERENCE, ROBERT CALDWELL; JONATHAN BELL; SHERRY JENKINS, <br><br> *Plaintiffs*, <br><br> v. <br><br> ALAN WILSON, in his official capacity as South Carolina Attorney General; JENNY WOOTEN, in her official capacity as Interim Executive Director of the State Election Commission; DENNIS SHEDD, in his official capacity as Chairman of the State Election Commission; JOANNE DAY, CLIFFORD ELDER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the State Election Commission, <br><br> *Defendants*. | JOINT REPLY CONCERNING THE APPLICABILITY OF *PURCELL* |

The Parties have conferred and do not agree regarding the applicability of *Purcell v. Gonzalez*, 549 U.S. 1 (2006), to this matter. The Parties' respective replies to the Court's Order, Dkt. 54, are as follows:

**The Plaintiffs' Position**

None of the concerns that animate the *Purcell* principle counsel in favor of staying relief here. *See, e.g., Carey v. Wis. Elections Comm'n*, 624 F. Supp. 3d 1020, 1035 (W.D. Wis. 2022) (Granting relief under Section 208 "won't create confusion but rather will alleviate it by clarifying

1

election officials' obligation under federal law."). Generally, relief sought under Section 208 does not implicate *Purcell*'s "primary concerns" of "confusion and disruption." *Id.* (ordering relief under Section 208 a mere three weeks before absentee voting started); *see also, e.g.*, *League of Women Voters of Ohio v. LaRose* ("*LWV Ohio*"), 741 F. Supp. 3d 694, 722–23 (N.D. Ohio 2024) (same, two months before absentee voting started); *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 238–39 (M.D.N.C. 2020) (same, one month before the "deadline to administer absentee-by-mail"). This case is no different.

"[T]he *Purcell* principle is designed to avoid" last-minute changes to election laws if they would cause "voter confusion and disruptive consequences" to election administration. *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 227 (4th Cir. 2024). In deciding whether to apply *Purcell*, courts look at the complexity of the relief sought, the proximity to the upcoming election, and the risk of confusing or deterring voters. *See Merrill v. Milligan*, 142 S. Ct. 879, 881 n.1 (2022) (Kavanaugh, J., concurring); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Here, Plaintiffs seek simple and easily implemented injunctions against two State entities—the Attorney General and the State Election Commission ("SEC"). The SEC estimates that it can implement the requested relief in "a week or less."[1] SEC Answers to Pls.' Interrogs. at 3–6, Dkt. 39-10. And if this Court issues relief, the SEC will notify local election officials "as soon as practicable," who they understand "can implement the directives of any order . . . with no or a minimal delay." *Id.* at 6–7. Even less is required of the Attorney General—he would simply have to cease enforcement of the challenged laws. *See Ala. State Conf. of NAACP v. Marshall*, No. 2:24-CV-00420-RDP, 2024 WL 4282082,

---

[1] Although printing and distributing new *physical* Poll Manager's Handbooks may take up to two months, *see* SEC Answers to Pls.' Interrogs. at 5, the downloadable, electronic version "can be updated in a week or less," and the SEC will notify all local election officials of any order "as soon as practicable" regardless. *Id*. at 5, 7.

at *4 (N.D. Ala. Sept. 24, 2024) ("Issuance of the contemplated injunction would not require the Attorney General to do anything."), *stay denied sub nom.*, *Ala. State Conf. of NAACP v. Att'y Gen., Ala.*, No. 24-13111, 2024 WL 4481489 (11th Cir. Oct. 11, 2024), *questions certified*, 161 F.4th 1286 (11th Cir. 2025). Thus, given that the general election is still more than three months away, *Purcell* does not apply. *See, e.g.*, *Democracy N.C.*, 476 F. Supp. 3d at 238–39.

Beyond that, a narrow order enjoining the challenged voting restrictions will neither confuse nor deter voters. *See Jack. Branch of NAACP v. City of Jacksonville*, No. 22-13544, 2022 WL 16754389, at *3 (11th Cir. Nov. 7, 2022) (holding that if there is no threat of voter confusion, applying *Purcell* "is not appropriate"). The injunction does not swap one rule for another—it merely *removes* a barrier that is preempted by federal law. *See LWV Ohio*, 741 F. Supp. 3d at 723 (rejecting *Purcell* argument against similar injunction under Section 208 because it would "resolve confusion for disabled voters" and would not "require a sweeping change" of election law); *cf. Common Cause R.I. v. Gorbea*, 970 F.3d 11, 16–17 (1st Cir. 2020) ("[T]o the extent certain voters expect the two-witness or notary requirement, we cannot imagine that it will pose any difficulty not to have to comply with it."). Thus, because the relief sought poses no threat of voter confusion, *Purcell* does not apply.

Defendants now conveniently suggest that *Purcell* applies. But until the Court's *sua sponte* order, neither the Attorney General nor SEC took that position. *See* Att'y Gen. Wilson's Resp. to Pls.' Mot. for Summ. J. at 35, Dkt. 45 (only arguing that *Purcell* foreclosed relief for the June *primary*); SEC Reply to Pls.' Resp. in Opp. to Defs.' Mot. for Summ. J. at 7, Dkt. 50 (same). That alone undermines their position here. *Cf. Rose v. Raffensperger*, 143 S. Ct. 58, 59 (2022). Regardless, *Purcell* is governed by its underlying justifications—it does not automatically delay relief for

the upcoming election. Here, because none of *Purcell*'s justifications are implicated by the relief sought, *Purcell* does not apply and any relief granted should take effect immediately.

**The SEC Defendants' Position**

The General Election is November 3, 2026 (Election). Per the Court's text order in Doc. No. 54, the State Election Commission Defendants (SEC) address the Court's inquiry regarding the applicability of *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam) to this case. On May 11, 2026, the SEC addressed *Purcell* in the SEC Reply to Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment, stating:

> Finally, especially with respect to Plaintiffs' claimed injury in the 2026 primary elections, the Court would have to step past the *Purcell* principle to assume Plaintiffs have any appreciable risk of harm if the SEC flip-flops its position on either § 7-13-780 or § 7-15-385(G). *See Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam). Under the *Purcell* principle, "Court orders affecting elections . . . can . . . result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell*, 549 U.S. at 4–5 (per curiam).[15] As of the date of this filing, the 2026 primary elections are less than a month away. Voting for military and overseas voters under the federal Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), 52 U.S.C.A. §§ 20301, *et. seq.*, S.C. Code Ann. §§ 7-15-600, *et. seq.*[16]

> Bottom line, there is no risk at all, and certainly no substantial risk that agency enforcement interpretations of these statutes will shift in a manner that substantially threatens the Individual Plaintiffs' rights in the 2026 election.

> [15] *See also Malliotakis v. Williams*, 146 S. Ct. 809, 811 (2026) (Alito, J., concurring) (the *Purcell* principle concerns "late judicial tinkering that can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others") (cleaned up); *Andino v. Middleton*, 141 S. Ct. 9, 10 (2020) (Kavanaugh, J., concurring) (this "Court has repeatedly emphasized that federal courts ordinarily should not alter state election rules in the period close to an election . . . ."); *S.C. Progressive Network Educ. Fund v. Andino*, 493 F. Supp. 3d 460, 470 (D.S.C. 2020) (finding a court "must abide by the law laid down by the Supreme Court 'that federal courts ordinarily

should not alter state election rules in the period close to an election'" (quoting *Middleton*, 141 S. Ct. at 10)).

[16]     Under both the federal UOCAVA statute and the state statute, election officials are required to send absentee ballots to covered voters requesting them by forty-five (45) days before any election. *See* 52 U.S.C.A. § 20302(a)(8) (requiring absentee ballots be sent to covered voters within 45 days of an election); § 7-15-680 (same). As noted *supra,* the 2026 primary election is on June 9, 2026. Therefore, the UOCAVA ballots for that election were sent to covered voters by on or before April 25, 2026.

Similarly, there is no risk at all that SEC's enforcement interpretations of these statutes will shift in a manner that substantially threatens the Individual Plaintiffs' rights in the Election. What has changed since the SEC initially addressed *Purcell* is that the statewide primaries are completed, and absentee voters are basically two months closer to choosing how to cast their votes in the Election. A list of the deadlines and actions must be taken by the SEC and the County Boards of Voter Registration and Elections (CBVRE) officials (who actually conduct the Election) between now and the Election, is attached hereto as **Exhibit A**. Affidavit of Conway Belangia with Exhibit A. Of note, the following deadlines are:

a.   Voters can request their absentee ballots at any time, and they will be mailed as soon the CBVRE have the ballots[2] to be used in the Election (S.C. Code Ann. §§ 7-15-200 and 7-15-300(B)(1));

b.   The CBVREs must provide their respective ballot styles for their absentee precent to the SEC no later than September 15, 2026, for SEC approval (§ 7-13-320(F));

b.   SEC has to provide Election databases to county boards no later than September 18, 2026;

c.   UOCAVA absentee ballots mailed no later than September 19, 2026;

d.   Early voting opens October 19 and closes October 31. S.C. Code Ann. § 7-13-25; and

e.   Deadline to apply for absentee ballots is October 23, 2026.

---

[2] To comply with the UOCAVA requirements, the absentee ballot styles have to be available by September 18, 2026.

*Purcell* is a *per curiam* opinion issued by the Supreme Court in 2006, standing for the proposition that ordinarily federal district courts should not enjoin state election laws close to an election and federal appellate courts should stay injunctions if a lower federal court contravene that principle. Recently in *Callais v. Louisiana*, the Supreme Court granted the *Callais* appellees' Application to Issue Judgment Forthwith (Application) immediately, instead of waiting the normal 32 days after entry of judgment pursuant to Sup. Ct. Rule 45.3. 606 U.S. __, 146 S.Ct. 1111 (2026).

The intervening Robinson Appellants opposed the Application arguing, *inter alia:*

> Under *Purcell v. Gonzales*, U.S. 1 (2006), federal courts may not disrupt a state's voting rules, including electoral maps, close to an election, much less when voter are already voting. Citing this principle, this Court stayed the lower court's order on May 15, 2024, in advance of the 2024 election. The principle applies *a fortiori* when voters have already cast votes in an election.

Robinson Br. at 1 (citations omitted). In support, Robinson Appellants cited *Abbott v. League of United Latin American Citizens*, 146 S.Ct. 418 (2025). There, the three-judge district court, months before the 2026 election, enjoined the use of a new electoral map. On appeal, the Supreme Court held:

> "This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." The District Court violated that rule here. The District Court improperly inserted itself into an active primary campaign, causing much confusion and upsetting the delicate federal-state balance in elections.

*Abbott*, 146 S.Ct. at 419 (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424, 140 S.Ct. 1205 (per curiam)). Here, instead of a primary campaign, there is an active general election campaign.

In their brief, Robinson Appellants cited to *Malliotakis v. Williams*, 146 S.Ct. 809, 811 (2026) (Alito, J., concurring) (stating *Purcell* prevents "late judicial tinkering that can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters,

among others." (cleaned up)).  Robinson Appellants also cite to *Merrill v. Milligan*.[3] 142 S.Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring) ("That principle—known as the *Purcell* principle— reflects a bedrock tenet of election law: When an election is close at hand, the rules of the road must be clear and settled. . . .  But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election.").[4]  Finally, Robinson Appellants cited to *Democratic National Committee v. Wisconsin State Legislature*, 141 S.Ct. 28, 31 (2020) (Ka-vanaugh, J., concurring) ("The Court's precedents recognize a basic tenant of election law: when an election is close at hand, the rules of the road should be clear and settled[,] . . . because running a statewide election is a complicated endeavor.").

Notably, in its decision granting the Application and allowing its opinion striking Louisi-ana's congressional plan as unconstitutional, to be effective immediately, the *Callais majority did not even mention or acknowledge* the *Purcell* argument. *Callais,* 146 S.Ct. at 1111-12.  Rather, the *Callais* dissent concluded that the Application should be denied on legal grounds and cited to the "*Purcell* principle", "[t]here is also the so-called *Purcell* principle which we invoked only five months ago to chide a federal district court for 'improperly insert[ing] itself into an active primary campaign.'" *Callais*, 146 S.Ct. at 1114 (citing *Abbott*, 146 S.Ct. at 419).  In letting the Court's decision become effective immediately, the *Callais* Court left it to the Louisiana elected officials to determine when to redistrict.

---

[3] This case arose for Alabama's redistricting of its congressional seats. The three-judge panel or-dered the State to redraw "Alabama's congressional districts be completely redrawn within a few short weeks.  The District Court declined to stay the injunction . . . even though the primary elec-tions began (via absentee voting) just seven weeks from now . . . ." *Id.* at 880.

[4] *See id.* at 881 n. 1 ("How close to an election is too close may depend in part on the nature of the election law at issue, and how easily the State could make the change without undue collateral effects. Changes that require complex or disruptive implementation must be ordered earlier than changes that are easy to implement.").

As the South Carolina State officials in charge of the Election, the SEC estimates it needs seventy-five (75) days after a hypothetical Court order granting Plaintiffs' relief in full to revise the following materials enumerated in Exhibit B to ensure a smooth and successful election. See **Exhibit B**, State Election Commission Defendants' Answers to Plaintiffs' Interrogatories, numbers 3 and 4. The seventy-five days includes time necessary for SEC to engage in training for the CBVRE officials and staff and for public education.

Finally, the Parties have complied with the deadlines contained in the Second Amended Conference and Scheduling Order, including the filing of their respective Motions for Summary Judgment.[5]

### The Attorney General's Position

The Attorney General views the *Purcell* principle as applicable to this case, warranting a stay of the case ahead of the 2026 general election. As this Court has already recognized, the *Purcell* principle generally suggests that "federal courts should not alter state elections rules in the period close to an election." *Andino v. Middleton,* 141 S. Ct. 9, 10 (2020) (Kavanaugh, J., concurring) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)). Thus, for the principle to apply, two general conditions must be satisfied: (1) the case must concern state election rules; and (2) a potential decision in the case must be close to an election. *See Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 897 (6th Cir. 2024) (describing *Purcell* as implicating "two questions," whether the district court decision would alter an "election rule[]" and whether the decision was issued on the "eve of an election").

As to the first condition, the challenged state laws are state elections rules. Courts have

---

[5] The Second Amended Conference and Scheduling Order requires that the Parties complete mediation on or before October 2, 2026. The SEC lacks statutory authority to agree to a settlement that is contrary to the clear and unambiguous language of State law, such as is the case here.

consistently applied the *Purcell* principle in challenges to restrictions on absentee voting. *See, e.g., Andino*, 141 S.Ct. at 10 (Kavanaugh, J., concurring) (applying *Purcell* in challenge to four provisions of state law related to absentee voting in South Carolina).

As for the second condition, although the Supreme Court has never "specified precisely" what it means to be "close to an election," the Court has applied the *Purcell* principle even when an election is months aways. *See League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022) (noting that the Supreme Court has granted a stay even when an election was "about four months" away); *see also Andino*, 141 S.Ct. at 10 (Kavanaugh, J., concurring) (applying *Purcell* to a September decision ahead of the November general election).

What's more, in determining "how far the *Purcell* principle extends," courts don't just "look to the next primary or general election date" and count backwards. *McClure v. Jefferson Cnty. Comm'n*, No. 25-13253, 2025 WL 2977740, at *2 (11th Cir. Oct. 16, 2025). Instead, courts consider other "critical deadlines" that arise before election day itself and what actions election officials will have to take ahead of those deadlines. *Id*. Here, those internal deadlines include a variety of deadlines related to absentee voting, some of which would fall as early as September 2026. *See* South Carolina Election Commission, 2026 Election Calendar (scVOTES), available at https://tinyurl.com/24zdr6ad (listing deadlines to request and mail absentee ballots, including ballots to voters covered under the Uniformed and Overseas Citizens Absentee Voting Act). And in terms of the actions of election officials, if this Court issued an injunction, voter information materials regarding voting assistance would likely need to be updated ahead of those deadlines, with update times ranging from a week to potentially as long as two months for the various materials. *See* (ECF No. 39-10) (State Election Commission discovery response describing "how long the Commission would need to amend" various materials). And that is just consid-

ering the time required to update the materials themselves. Additional time for training on the new materials could easily be required, necessitating even more than two months' lead time. In short, this Court should consider the applicability of *Purcell* with these internal deadlines in mind—not merely the November general election date. With those deadlines in mind, any potential decision issued in this case would necessarily be close to an election, triggering the applicability of *Purcell*.

As a final point, the underlying logic of *Purcell* counsels in favor of a stay of the case in its entirety until after the 2026 general election. Although courts have sometimes invoked *Purcell* to tailor an injunction following a decision on the merits before an election, it also provides a basis to stay any decision in a case until after the election. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.").[6] Such an approach is warranted in part because court orders "themselves [may] result in voter confusion . . . ." *Purcell*, 549 U.S. at 4–5.

The risk of confusion is particularly acute in this case, as the Plaintiffs have sought unusually broad relief. For the reasons outlined in the Attorney General's summary judgment briefing, such relief is improper. *See* (ECF No. 45 at 35) ("If this Court concludes that any of the challenged provisions are preempted, it should narrowly tailor an injunction to Plaintiffs who have demonstrated standings. Plaintiffs' argument to the contrary, that the challenged provisions are void as a matter of law and must be universally enjoined, should be rejected for at least two rea-

---

[6] Of course, *Purcell* can also provide a basis to deny a requested injunction ahead of an election. *See S.C. Progressive Network Educ. Fund v. Andino*, 493 F. Supp. 3d 460, 468 (D.S.C. 2020) (denying motions for a temporary restraining order and a preliminary injunction on *Purcell* grounds).

sons."). If such broad relief were granted, and an appeal immediately ensued, even the mere possibility of "conflicting orders" could lead to considerable voter confusion. *See Purcell*, 549 U.S. at 4 (noting that "conflicting orders" especially pose a risk of voter confusion).

But even more limited relief invites a meaningful risk of confusion. On this point, a few non-exhaustive questions are worth considering: which disabled voters would be entitled to assistance in voting? The named Plaintiffs? Or disabled members of the NAACP more broadly? Would such relief extend to present and future members? What kinds of disabilities would qualify electors for voting assistance? Would voting assistance extend to both absentee and in-person voting? And perhaps even more troubling, which assistors—who are non-parties to the case—could provide assistance?

The Attorney General respectfully suggests that all of these considerations counsel in favor of staying the case until after the 2026 general election. Following the election, the parties can be afforded a fair opportunity to raise their various claims and defenses free of the risks outlined in *Purcell*.

**July 9, 2026**

Respectfully and jointly submitted by,

*/s Allen Chaney*

_____
Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION OF SOUTH CAROLINA FOUNDATION
P.O. Box 1668
Columbia, SC 29202
(864) 372-6681
achaney@aclusc.org

Stephen D. Hibbard*
PROSKAUER ROSE LLP
2029 Century Park East

Suite 2400
Los Angeles, CA 90067-3010
(310) 284-5622
shibbard@proskauer.com

Robert W. Pommer III*
Alexander B. Guzy-Sprague*
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 600 South
Washington, DC 20004-2533
(202) 416-6808
rpommer@proskauer.com
aguzy-sprague@proskauer.com

Bradley M. Presant*
Amy B. Gordon*
Michael Beckwith*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299
(212) 969-3284
bpresant@proskauer.com
agordon@proskauer.com
mbeckwith@proskauer.com


Clayton Pierce**
Davin Rosborough**
Jonathan Topaz**
Sophia Lin Lakin**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
cpierce@aclu.org
drosborough@aclu.org
jtopaz@aclu.org
slakin@aclu.org

Brian Dimmick**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW, 6th Floor
Washington, D.C. 20005
(202) 731-2395
bdimmick@aclu.org

12

*Attorneys for Plaintiffs*
*\* Motion for admission Pro Hac Vice forthcoming*
*\*\* Admitted Pro Hac Vice*

**/s Thomas Hydrick**

Alan Wilson
*Attorney General*
Thomas T. Hydrick (Fed. ID No. 13322)
*Solicitor General*
Joseph D. Spate (Fed ID No. 13100)
*Deputy Solicitor General*
Office of the South Carolina Attorney General
1000 Assembly St
Columbia, SC 29201
(803) 734-4127
thomashydrick@scag.gov
josephspate@scag.gov

*Counsel for Attorney General Alan Wilson*

**/s M. Elizabeth Crum**

Mary Elizabeth Crum (Fed. ID No. 372)
Tracey C. Green (Fed. ID No. 6644)
Michael R. Burchstead (Fed. ID No. 102967)
BURR & FORMAN LLP
Post Office Box 11390
Columbia, SC 29211
(803) 799-9800
lcrum@burr.com
tgreen@burr.com
mburchstead@burr.com

Thomas W. Nicholson (Fed. ID No. 12086)
STATE ELECTION COMMISSION
1122 Lady Street, Suite 500
Columbia, SC 29201
(803) 734-9063
tnicholson@elections.sc.gov

*Counsel for Defendants Jenny Wooten, Dennis Shedd, JoAnne Day, Clifford J. Edler, Linda McCall, and Scott Moseley*

13