**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| NAACP SOUTH CAROLINA STATE CONFERENCE, ROBERT CALDWELL, JONATHAN BELL, and SHERRY JENKINS,<br>Plaintiffs, | § | |
| vs. | § | CIVIL ACTION NO. 3:25-cv-13754-MGL |
| ALAN WILSON, *in his official capacity as South Carolina Attorney General*, CONWAY BELANGIA, *in his official capacity as Executive Director of the State Election Commission*, ROBERT BOLCHOZ, *in his official capacity as Chairman of the State Election Commission*, and JOANNE DAY, CLIFFORD ELDER, ANGELA STRINGER, and SCOTT MOSELEY, *in their official capacities as members of the State Election Commission*,<br>Defendants. | § | |

**AMENDED MEMORANDUM OPINION AND ORDER**
**GRANTING ONE DEFENDANT'S MOTION TO DISMISS**
**AND THE OTHER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**SOLELY ON THE ISSUE OF STANDING**

## I. INTRODUCTION

Plaintiff NAACP South Carolina State Conference filed this lawsuit alongside Individual Plaintiffs Robert Caldwell, Jonathan Bell, and Sherry Jenkins (collectively, Plaintiffs). The South Carolina NAACP sues on behalf of its members. They bring the action against Alan Wilson, in his

official capacity as South Carolina Attorney General, as well as Conway Belangia, in his official capacity as Executive Director of the State Election Commission, Robert Bolchoz, in his official capacity as Chairman of the State Election Commission, and Joanne Day, Clifford Elder, Angela Stringer, and Scott Moseley, in their official capacities as members of the State Election Commission (collectively, the Election Officials).

This action concerns certain South Carolina laws regulating assistance with absentee voting. Plaintiffs seek declaratory and injunctive relief preventing Defendants from implementing or enforcing those provisions. Defendants, however, protest Plaintiffs are without standing to bring the lawsuit against them.

Pending before the Court are Wilson's Fed. R. Civ. P. 12(b)(1) motion to dismiss and the Election Officials' motion for summary judgment. Having carefully considered the motions, the responses, the replies, the record, and the relevant law, the Court will grant both motions, but solely on the issue Plaintiffs lack of standing to bring the claim.

## II. FACTUAL AND PROCEDURAL HISTORY

"As part of its amendments to the Voting Rights Act in 1982, Congress added Section 208 [(the Act)], which provides: 'Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.' 52 U.S.C. § 10508." *Id.* ¶ 39.

Plaintiffs challenge three groups of South Carolina statutes concerned with the suffrage of those who need assistance with mail-in voting: S.C. Code Ann. § 7-13-780, concerning eligibility

for voting assistance; §§ 7-15-310, 7-15-330, and 7-15-385, concerning who may assist with absentee voting; and §§ 7-15-330(B)(4) and 7-15-385(G), limiting how many absentee-ballot applications or return envelopes one person may request or return during an election.

"Plaintiff NAACP South Carolina State Conference (the South Carolina NAACP) is a nonprofit, nonpartisan membership organization in South Carolina. The South Carolina NAACP is a state subsidiary of the National Association for the Advancement of Colored People (NAACP), a national civil rights organization. The South Carolina NAACP was chartered in 1939 and is the oldest civil rights group in South Carolina." Complaint ¶ 17 (internal quotation marks omitted) (capitalization standardized).

"The South Carolina NAACP has [seventy-seven] branches comprised of members from across the State, including at least one branch in each of South Carolina's [forty-six] counties. The South Carolina NAACP is comprised of more than 13,000 members. Most of its members are Black." *Id.* ¶ 18.

"Among the goals of the South Carolina NAACP are the elimination of barriers to Black Americans' and all voters' participation in the democratic process." *Id.* ¶ 19.

"The South Carolina NAACP's members include individuals with disabilities who plan to rely on assistance to vote absentee, and who are [according to Plaintiffs] therefore afforded an assistor of their choice by [the Act] but are denied . . . assistance by South Carolina law." *Id.* ¶ 20.

"Plaintiff Robert Caldwell is a [seventy-four]-year-old man who currently resides at the MUSC Health Chester Nursing Center (MUSC Chester) in Chester, South Carolina. . . . Caldwell has resided there for approximately eight years. . . . Caldwell is the President of the MUSC Chester Resident's Council and in that role helps advocate for residents. . . . Caldwell is also a member of

the South Carolina NAACP." *Id.* ¶ 21 (internal quotation marks omitted) (capitalization standardized).

"Caldwell had a stroke in 2015, largely lost use of his legs, and now relies on a wheelchair to get around. [Plaintiffs maintain,] [b]ecause of his disability, . . . Caldwell is afforded an assistor of his choice throughout the voting process under [the Act]." *Id.* ¶ 22.

"In the past, . . . Caldwell has relied on MUSC Chester staff to assist him with requesting and returning his absentee ballot. . . . Caldwell intends to vote by mail in the 2026 primary and general elections and wants assistance with requesting and returning his absentee ballot. He would choose to receive . . . assistance from Barvette Gaither, a social worker at MUSC Chester. Because many residents at MUSC Chester seek to rely on . . . Gaither for voting assistance, the Five-Voter Limits impede . . . Caldwell's ability to rely on the assistor of his choice to vote in the 2026 elections." *Id.* ¶ 23-24 (citations omitted).

"Plaintiff Jonathan Bell is a 60-year-old man who currently resides at Union Post Acute, a post-acute care facility and nursing home in Union, South Carolina. He has a physical disability caused by complications from back surgery and uses a wheelchair." *Id.* ¶ 25,

"Bell intends to vote by mail in the 2026 primary and general elections. Under [the Act], . . . [Plaintiffs contend] Bell is entitled to vote with assistance and wants to rely on assistance from Deborah Allen, the Activities Director at Union Post Acute. . . . [Plaintiffs state] Bell's right to obtain assistance from the person he trusts is impeded by South Carolina's Five-Voter Limits on providing assistance, as more than five other residents will likely rely on . . . Allen for help voting in the 2026 elections." *Id.* ¶ 26 (citations omitted) (capitalization standardized).

"Plaintiff Sherry Jenkins is a [seventy-five]-year-old woman who also resides at Union Post Acute in Union, South Carolina. . . . Jenkins has resided at Union Post Acute since November 2023. [She] has both physical and nonphysical disabilities. [She] has osteoporosis, scoliosis, an optic nerve impairment, and macular degeneration. She relies on a wheelchair to get around and, because of her vision impairment, requires assistance with reading and filling out paperwork." *Id.* ¶ 27-28 (capitalization standardized)

Plaintiffs state "Jenkins requires assistance to vote and is afforded an assistor of her choice throughout the voting process under . . . . Jenkins intends to vote by mail in the 2026 primary and general elections and wants assistance with requesting, filling out, and returning her absentee ballot. She would like to receive . . . assistance from . . . Allen. [Plaintiffs insist,] [a]s with . . . Bell, the Five-Voter Limits impede . . . Jenkins' ability to rely on . . . Allen (the assistor of her choice) to vote in the 2026 elections." *Id.* ¶ 29-30 (citations omitted).

"Defendant Alan Wilson is the Attorney General of South Carolina and is sued in his official capacity. As the chief prosecuting officer in the State, he is tasked with supervising the enforcement of the State's criminal laws, S.C. Const. art. V, § 24, including through his constitutional authority to supervise and direct the activities of the solicitors or prosecuting attorneys located in each judicial circuit of the State. This authority includes supervising the enforcement of criminal penalties for violating the State's restrictions on voting assistance[.]" *Id.* ¶ 31 (citations omitted).

"Defendant [Conway Belangia] is the . . . Executive Director of the State Election Commission and is sued in [his] official capacity. As . . . Executive Director, [he] is the chief administrative officer of the Commission and responsible for supervising the promulgation of

election regulations and ensuring . . . the Commission and county boards of voter registration and elections comply with federal and state law." *Id.* ¶ 32 (citations omitted).

"Defendant [Robert Bolchoz] is Chairman of the State Election Commission and is sued in his official capacity. As Chairman of the Commission, he is tasked with carrying out South Carolina's voting laws and promulgating regulations for county boards of voter registration and elections pursuant to them." *Id.* ¶ 33 (citation omitted).

"Defendants Joanne Day, Clifford J. Elder, Linda McCall, and Scott Moseley are Members of the State Election Commission and are sued in their official capacities. As Members of the Commission, they are tasked with carrying out South Carolina's voting laws and promulgating regulations for county boards of voter registration and elections pursuant to them." *Id.* ¶ 34 (citation omitted) (capitalization standardized).

As is relevant here, Wilson moved to dismiss Plaintiffs' complaint under Rules 12(b)(1) and 12(b)(6), Plaintiffs responded, and Wilson replied. After discovery, the Election Officials moved for summary judgment, Plaintiffs responded, and the Election Officials replied. The standing issue is now fully briefed and ready for adjudication.

## III. STANDARD OF REVIEW

### *A. Standing*

Article III of the United States Constitution confines federal judicial power so federal courts may consider only "[c]ases" and "[c]ontroversies." U.S. Const., Art. III, § 2. Thus, "a plaintiff seeking relief in federal court must first demonstrate . . . [s/he] has standing to do so, including . . . [s/he] has a personal stake in the outcome[ ]" of the lawsuit. *Gill v. Whitford*, 585 U.S. 48, 54

(2018) (citation omitted) (internal quotation marks omitted). "The doctrine of standing. . . . requires federal courts to satisfy themselves . . . the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009).

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) . . . is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Thus, before a federal court can anything in a case, the plaintiff must have standing.

"[W]hen when standing is challenged on the basis of the pleadings, we "accept as true all material allegations of the complaint, and ... construe the complaint in favor of the complaining party[.]" *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "Standing does not turn on whether a plaintiff has definitively stated a valid cause of action." *DiCocco v. Garland*, 52 F.4th 588, 591 (4th Cir. 2022).

"In other words, a valid claim for relief is not a prerequisite for standing." *Id.* "For it is well settled . . . the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946). In fact, "in assessing plaintiffs' standing, [the Court] must assume they will prevail on the merits." *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011).

"[O]ne party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006).

***B. Motion to dismiss***

A motion to dismiss made under Rule 12(b)(1) tests the subject-matter jurisdiction of a complaint. When addressing such a motion, the court must initially determine whether the motion is a facial or factual challenge, as there are two distinct ways to present a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), each of which trigger different standards of review. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982).

First, if the Rule 12(b)(1) motion is a facial challenge attacking subject-matter jurisdiction by asserting "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based[,]" then "the facts alleged in the complaint are assumed to be true and the plaintiff . . . is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams*, 697 F.2d at 1219.

Second, if the 12(b)(1) motion is a factual challenge, refuting the alleged jurisdictional basis of a complaint by asserting, although facially adequate, the allegations are factually untrue, the district court may then consider extrinsic information beyond the complaint to determine whether subject-matter jurisdiction exists. *Thigpen v. United States*, 800 F.2d 393, 402 n. 15 (4th Cir.1986) (citing *Adams*, 697 F.2d at 1219).

Wilson brings a facial challenge here. On such a challenge, the Court accepts all well-pleaded facts as true but declines from accepting legal conclusions or speculation. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). The plaintiffs bear the burden of establishing jurisdiction. *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009).

Here, because Plaintiffs seek prospective relief, past experience alone is insufficient; they must face a real and immediate threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105-06 (1983).

### *C. Motion for summary judgment*

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show . . . there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might "affect the outcome of the suit under the governing law." *Id.*

On a motion for summary judgment, all evidence must be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990); *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987) (holding the Court views all facts, and all reasonable inferences to be drawn from them, "in the light most favorable to the nonmoving party"). When multiple parties file motions for summary judgment, as is the case here, the court applies the same standard of review to each motion, and considers "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

## IV. DISCUSSION AND ANALYSIS

Plaintiffs ask this Court to decide whether several South Carolina voting-assistance provisions are preempted by the Act. But the Constitution requires the Court to first decide who may sue before it decides who is right.

On the issue of standing, Justice Antonia Scalia wrote for the Supreme Court, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In his earlier writings, he reduced the inquiry to a plainer question: "What's it to you?" Antonin Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983). The phrase is informal; the principle is not.

And then there is the strident dissent by Justice Elena Kagan in *Biden v. Nebraska*, 600 U.S. 477 (2023), with whom Justice Sonia Sotomayor and Justice Ketanji Brown Jackson joined. In this case, in which a group of states sued the Biden administration over its student loan forgiveness plan, these justices took issue with the majority of the Court's holding the states had standing.

Here is a small portion of what she wrote, "In every respect, the Court today exceeds its proper, limited role in our Nation's governance." *Biden*, 600 U.S. at 521 (Kagan, J., dissenting). She continues:

> The Court's first overreach in this case is deciding it at all. Under Article III of the Constitution, a plaintiff must have standing to challenge a government action. And that requires a personal stake—an injury in fact. We do not allow plaintiffs to bring suit just because they oppose a policy. Neither do we allow plaintiffs to rely on injuries suffered by others. Those rules may sound technical, but they enforce "fundamental limits on federal judicial power." *Allen v. Wright*, 468 U. S. 737, 750 (1984). They keep courts acting like courts. Or stated the other way around, they prevent courts from acting like this Court does today. The plaintiffs in this case are six States that have no personal stake in the Secretary's loan forgiveness plan. They are classic ideological plaintiffs: They think the plan a very bad idea, but they are no worse off because the Secretary differs. In giving those States a forum—in adjudicating their complaint—the Court forgets its proper role. The Court acts as though it is an arbiter of political and policy disputes, rather than of cases and controversies.

*Id*. at 522–23.

Some have blamed the justices and litigants for having flexible and elastic views of the standing requirement when they want to find standing, while simultaneously tightening those same rules when they do not. That said, absent here is any evidence of standing gamesmanship.

So, there you have it: a wide view of standing. Now, the Court shifts its focus onto the narrow view of the standing dispute in this action.

As the Court noted earlier, Plaintiffs take issue with three groups of South Carolina statutes concerned with the suffrage of those who need assistance, specifically those who require assistance with mail-in voting: S.C. Code Ann. § 7-13-780, concerning eligibility for voting assistance; §§ 7-15-310, 7-15-330, and 7-15-385, concerning who may assist with absentee voting; and §§ 7-15-330(B)(4) and 7-15-385(G), limiting how many absentee-ballot applications or return envelopes one person may request or return during an election.

***A. Whether the Individual Plaintiff have standing***

***1. Whether the Individual Plaintiffs have established the injury prong***

Article III claims must remain grounded in concrete injury; lifted into conjecture, it loses its jurisdictional strength. It is without question the Individual Plaintiffs (1) have disabilities, (2) having trustworthy voting assistance matters, and (3) Section 208 protects eligible voters. Those three propositions, however, fail to establish any Individual Plaintiff is actually or imminently being denied assistance by the challenged provisions. A statutory disagreement is not itself a concrete injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). "No concrete harm, no standing." *Id*. at 442.

First, Plaintiffs have failed to show a realistic danger § 7-13-780, concerning eligibility for voting assistance, will disqualify them from assistance. The Elections Officials's undisputed position, reflected in its Poll Managers Handbook and Executive Director Belangia's affidavit, is a

voter who states he or she is disabled receives assistance without further inquiry, subject only to Section 208's employer-and-union exceptions.

Here is what the most recent Poll Manager's Handbook states: "[A]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officers or agent of the voter's union." *Poll Managers Handbook* 65 (Sept. 2024) (citations omitted).

And, this is from Belangia's affadavit: "[A]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officers or agent of the voter's union." Belangia's Affidavit (citations omitted).

The Individual Plaintiffs allege disabilities and therefore qualify under the Election Officials's stated administration of the statute. None alleges a prior denial on the theory advanced here. And, a Court may not presume Election Officials will reverse their stated policy and adopt the very interpretation they currently disavow. That chain is possible in the abstract, but Article III requires an injury that is actual, certainly impending, or substantially likely. *Clapper v. Amnesty International USA*, 568 U.S. 398, 409-14 (2013). That is absent here.

Second, S.C. Code Ann. §§ 7-15-310, 7-15-330, and 7-15-385, concerning who may assist with absentee voting, the possible-assistor restrictions have not been shown to bar the people Plaintiffs identify. Caldwell prefers Gaither; Bell and Jenkins prefer Allen. The record fails to show either woman is ineligible because of family status, voter registration, facility status, or another challenged criterion. Nor does it show any Individual Plaintiff requested assistance and was refused on one of those grounds.

A plaintiff may bring a proper pre-enforcement suit without first suffering prosecution or denial, but there still must be a credible and imminent threat the challenged rule will operate against

that plaintiff. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-64 (2014). But, that necessary threat is absent here. Speculation supplies no standing; and a supposed suit built on stacked suppositions is unable to stand.

Third, the five-voter limits fail to establish injury on this record. Individual Plaintiffs point to evidence more than five facility residents may seek help from Allen or Gaither, Allen expects many requests, and Gaither once attempted to deliver more than five ballots.

But the alleged injury to these Individual Plaintiffs depends on several unresolved contingencies: more than five residents must request the particular statutory act of requesting or returning an absentee ballot; the preferred assistor must choose or be required to help others first; the Individual Plaintiff must be excluded from the five; and no other permissible means of requesting or returning the ballot may remain available. The evidence fails to show this sequence has occurred or is substantially likely to occur to Caldwell, Bell, or Jenkins.

Concern is understandable, but concern is not concreteness. A fear founded on future choices is too fragile for federal jurisdiction.

The distinction here between motion to dismiss pleading and summary judgment proof fails to alter the outcome. The Complaint fails to plausibly allege a real and immediate denial as to Wilson. After discovery, Plaintiffs still fail to identify an imminent refusal to assist as to the Election Officials, a denied request for assistance, or a definite selection of someone who has already been asked by more than five voters to assist with their mail in ballot. At Rule 56, evidentiary silence is dispositive. *Murthy v. Missouri*, 603 U.S. 43, 58, 70-73 (2024).

### 2. *Whether the Individual Plaintiffs have established the traceability and redressability prongs*

The same contingencies defeat causation and redressability. The feared denial of voting assistance depends principally on future choices by facility residents and private assistors, as opposed to any concrete enforcement steps by Wilson or the Election Officials.

When standing depends on third-party conduct, the plaintiff must show the challenged government action predictably produces the injury. *Department of Commerce v. New York*, 588 U.S. 752, 768 (2019). But Individual Plaintiffs have failed to show such predictability as to themselves.

Likewise, an injunction would remove statutory limits in the abstract, but would not make it likely Gaither or Allen would assist a particular Individual Plaintiff at a particular election. Article III requires more than removal of a legal provision; the relief must likely provide the plaintiff a tangible, personal benefit. *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 380-81 (2024)

Remedy must meet injury. Where injury is conjectural, redress is conjectural too.

### *B. Whether The South Carolina NAACP has standing*

The South Carolina NAACP fares no better. An organization may sue in its own right if the defendant's conduct directly impairs its activities, or on behalf of its members if at least one identified member would have standing, the suit is germane to the organization's purpose, and neither the claim nor relief requires individual participation. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 199 (2023).

The Complaint fails to allege the challenged laws directly forced the organization to divert resources or impaired a core activity in a concrete way. *Food & Drug Administration*, 602 U.S. at 394-96. Thus, organizational standing fails. Associational standing also fails.

Caldwell is the only identified member on whom the South Carolina NAACP principally relies, but he lacks individual standing for the reasons the Court stated above. "Because [the individual plaintiffs] do not have standing to sue, it follows that [South Carolina NAACP] does not have associational standing." *Lane v. Holder*, 703 F.3d 668, 674 n.6 (4th Cir. 2012).

General allegations some unnamed member may someday confront a restriction are insufficient to cure the defect. *Summers v. Earth Island Institute*, 555 U.S. 488, 497-99 (2009). An association may amplify its members' voices; it cannot manufacture a missing injury. Membership alone is not a jurisdictional mooring. Any holding to the contrary would be untethered to the Supreme Court's standing jurisprudence.

Given the above discussion and analysis, the Court is constrained to dismiss Plaintiffs claims for want of standing. Binding precedent leaves the Court without any other alternative.

"It is emphatically the province and duty of the judicial department to say what the law is[,]" *Marbury v. Madison*, 5 U.S. 137, 177 (1803) (C.J., John Marshall), not what some might wish it to be.

## IV. CONCLUSION

In light of the foregoing discussion and analysis, Wilson's motion to dismiss and the Election Officials' motion for summary judgment are both **GRANTED** solely on the basis Plaintiffs lack standing to bring their claims against Defendants. The other arguments in their motions are **RENDERED AS MOOT**.

The case is therefore **DISMISSED WITHOUT PREJUDICE**, and all remaining motions are also **RENDERED AS MOOT**.

**IT IS SO ORDERED**.

Signed this 12th day of November, 2026, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE